The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Mark MOYER, a/k/a Marc Garfield, Defendant-Appellee.

No. 82SA264.

Supreme Court of Colorado, En Banc.

Oct. 11, 1983.

Robert L. Russel, Dist. Atty., David H. Zook, Chief Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Elvin L. Gentry, P.C., Colorado Springs, for defendant-appellee.

NEIGHBORS, Justice.

The defendant, Mark Moyer (also known as Marc Garfield), was charged by a grand jury indictment filed in the District Court of El Paso County with two counts of charitable fraud [1] and one count of tamper-

---

1. Section 18–5–115, C.R.S.1973 (1978 Repl.Vol. 8). Counts 1 and 2 of the indictment allege in pertinent part:

"COUNT ONE: That on or between November 15, 1980 and May 15, 1981, in the County of El Paso, Colorado, MARK MOYER aka MARC GARFIELD . . . did unlawfully, feloniously and

knowingly solicit and receive contributions for a purpose and use which, by affirmative representations and through lack of adequate disclosure, led persons to whom the solicitation was made and from whom the contribution was received, reasonably to believe that such contribution would be used for the primary benefit

ing with a witness.[2] The trial court found the charitable fraud statute to be unconstitutionally vague, chiefly because the term "primary benefit" is subject to widely varying interpretations and the statute does not fairly describe the prohibited conduct. The district court also found that probable cause did not exist to support the charge of tampering with a witness. The trial court's order dismissing the charges on these grounds was stayed pending resolution of the People's appeal.[3] We affirm the district court's decision that section 18–5–115(1)(a), C.R.S.1973, of the charitable fraud statute is unconstitutional, but reverse its ruling on the probable cause issue.

## I.

Evidence presented to the grand jury revealed the following pertinent facts. In October of 1980, the Colorado Jaycees entered into a contract with Garfield Productions (Garfield) which agreed to conduct a telephone solicitation drive for a fund-raising project. Under the contract, Garfield, a company owned by the defendant, offered packages of trash bags in exchange for contributions. Persons solicited by the defendant's company were told that the money would be used by the Jaycees to assist the parents of handicapped children at the S.A. Wilson School in Colorado Springs in buying an alarm system and/or technical equipment. The contract provided that the Jaycees were to receive twenty percent of the gross proceeds and Garfield was to receive the remaining eighty percent. Approximately $100,000 was raised through

these telephone solicitations. Of the $20,000 allocated to the Jaycees under the contract, $5,000 was paid to B.J. Brady, the Jaycees' executive vice-president; $10,000 was allocated to the Jaycees' state office for administrative expenses and other programs; and $5,000 was awarded to the local chapters in whose area the solicitation had been conducted, i.e., the Colorado Springs, Pikes Peak, and Fountain Valley chapters. It appears from the record that it was from the local chapters' allocation that the parents of children at the Wilson School received approximately $3,400 for the purchase of an alarm system for the school.

Early in 1981, the defendant entered into a second contract with the Jaycees for fund-raising through telephone solicitations. This contract involved selling tickets for $10 to a "country-western jamboree" to be held on June 21, 1981. Testimony presented to the grand jury indicated that some of the persons who were asked to buy tickets were told that the proceeds would be used to help build a Multiple Sclerosis Research Center in Denver. The contract provided for a similar division of the gross proceeds, i.e., eighty percent for the defendant and his company and twenty percent for the Jaycees. The grand jury heard evidence that approximately $89,000 was raised through ticket sales for the concert performances, of which $17,900 was to be forwarded to the Jaycees under the terms of the contract. As of the time of the grand jury proceedings, however, the financial transactions had not been completed.[4] Therefore, the

of a charitable organization while not intending that such contributions would be so used; In violation of C.R.S.1973, 18–5–115, as amended, Charitable Fraud.

"COUNT TWO: That on or between March 15, 1981 and July 15, 1981, in the County of El Paso, Colorado, MARK MOYER aka MARC GARFIELD . . . did unlawfully, feloniously and knowingly solicit and receive contributions for a purpose and use which, by affirmative representations and through lack of adequate disclosure, led persons to whom the solicitation was made and from whom the contribution was received, reasonably to believe that such contribution would be used for the primary benefit of a charitable organization while not intending that such contributions would be so used; In

violation of C.R.S.1973, 18–5–115, as amended, Charitable Fraud."

2. Section 18–8–605, C.R.S.1973 (1978 Repl.Vol. 8).

3. Pursuant to section 16–12–102, C.R.S.1973 (1978 Repl.Vol. 8), the district attorney was required to appeal the trial court's finding that the charitable fraud statute is unconstitutional.

4. On July 22, 1981, the executive vice-president of the Jaycees testified before the grand jury that of the $17,900 due to the Jaycees under the contract, "we have received $11,000, and $6,000 of that has cleared the bank." When questioned about why only a portion of the

record does not establish how much money was received by the Colorado Jaycees as a result of this project.

Count 3 of the indictment arose out of an incident which occurred during the grand jury investigation. One witness, a former employee of the defendant, testified that the defendant told her that if she or "ten people" appeared before the grand jury, he would sue them for perjury.

At the close of its investigation, the grand jury returned the three count indictment against the defendant. The executive vice-president of the Colorado Jaycees, B.J. Brady, also was indicted on two counts of charitable fraud.

The defendant filed a motion to dismiss the indictment in the trial court, alleging that the charitable fraud statute is unconstitutional. In his motion the defendant alleged that the statute is both facially unconstitutional and unconstitutional as applied because it is vague, overbroad, and violates his right to equal protection and due process guarantees under the United States and Colorado Constitutions.

The court held a hearing on the motion. Evidence was presented that the El Paso County District Attorney's Office had issued a written opinion in May 1980, which indicated that "primary benefit" meant "more than fifty percent of the net proceeds" of the solicitation. At the time of the motions hearing, the district attorney's position was that "primary benefit" meant "more than fifty percent of the gross proceeds" received through any charitable solicitation. The trial court took the motion under advisement and later ruled that the charitable fraud statute is unconstitutionally vague. The judge stated:

"In considering this particular Statute, the Court would indicate that the thrust and portion of the Statute which the Court finds the most problems with would be 'the primary benefit.' And the Court has evidence before it which has been presented as to the varying inter-

pretations that had been given to that phrase by various prosecutors in this judicial district as well as other judicial districts in this state; that the Court feels that that is overwhelming evidence that there is no standard under which a common person could ever comprehend exactly what it was that was forbidden, nor to give the Court any guidance whatsoever in the application of this Statute, nor to a person of average intelligence, would they know exactly who it was that was going to be prosecuted for what, and for that reason the Court feels that the Statute does not meet due process requirements and should, therefore, be held to be unenforceable as violative of the Defendant's constitutional rights, to be adequately advised as to what [is] criminal behavior and also to have a standard certain enough to assure fair and equal application of the law to all persons."

## II.

The first question we address is the constitutionality of the charitable fraud statute, section 18–5–115(1)(a), C.R.S.1973 (1978 Repl.Vol. 8), which is charged in the indictment and which provides:

"(1) A person commits charitable fraud if such person commits any of the following acts:

"(a) Solicits or receives contributions for a purpose or use which, by affirmative representations or through lack of adequate disclosure, leads the person or persons, to whom the solicitation is made or from whom the contribution is received, reasonably to believe that such contributions will be used for the primary benefit of a charitable organization while not intending that such contributions will be so used. Evidence that contributions are used other than primarily for the benefit of a charitable organization shall be admissible to prove that such contributions were solicited or received with the intent that the use would be other than

---

funds had cleared the bank, he said that the defendant "requested that we hold $5,000 worth of the checks until he could make them

good. That contract expires on July 31st, so it is not technically over yet."

primarily for the benefit of a charitable organization."

The concept the trial court struggled with and which we address is the meaning of the terms "primary benefit" and "primarily for the benefit." The trial court determined that these terms were vague and did not fairly describe the conduct which is prohibited. We agree.

■ A statute which is unconstitutionally vague constitutes a denial of due process of law under the United States and Colorado Constitutions.[5] *See People v. Beruman,* 638 P.2d 789 (Colo.1982); *People In the Interest of C.M.,* 630 P.2d 593 (Colo. 1981). A statute is unconstitutionally vague if persons of common intelligence must guess at its meaning. *People v. Enea,* 665 P.2d 1026 (Colo.1983); *Beruman,* 638 P.2d 789; *Williams v. City and County of Denver,* 622 P.2d 542 (Colo.1981). However, when reviewing a statute in the context of a vagueness challenge, we must construe the statute so as to uphold its constitutionality whenever a reasonable and practical construction may be applied to it. *Beruman,* 638 P.2d 789; *R & F Enterprises, Inc. v. Board of County Commissioners,* 199 Colo. 137, 606 P.2d 64 (1980).

The legislature failed to define the terms "primary benefit" and "primarily for the benefit" as used in the charitable fraud statute. "Primarily" is defined in *Webster's Third New International Dictionary* as "first of all: FUNDAMENTALLY, PRINCIPALLY ... in the first place: ORIGINALLY." "Primary" is defined as follows: "first in order of time or development: INITIAL: PRIMITIVE ... first in‚ rank or importance: CHIEF, PRINCIPAL ... BASIC, FUNDAMENTAL ... functioning or transmitted without intermediary: DIRECT ... not derived from or dependent on something else: FIRSTHAND, INDEPENDENT, ORIGINAL." *Webster's Third New International Dictionary* 1800 (1969). We recognize the need for legisla-

tion proscribing fraud in the solicitation and use of charitable contributions. Unfortunately, these dictionary definitions do not provide adequate guidance in the context of a criminal prosecution.

■ Although several reasonable and practical constructions may be applied to the statutory language in question, such constructions do not provide a readily ascertainable standard by which one's conduct may be measured. With respect to proceeds of charitable solicitations, it is unclear whether the General Assembly intended "primary benefit" to mean fifty percent of the proceeds, more than fifty percent of the proceeds, or a share larger than that received by any other party regardless of whether it amounted to fifty percent or more of the proceeds. Furthermore, it is unclear whether the amount which constitutes the "primary benefit" (whatever that may be) is to be calculated on the basis of the gross proceeds or net proceeds of the charitable solicitation. The fact that reasonable persons may construe the statute differently is clearly established by the evidence presented to the trial court that the district attorney as of May 6, 1980, interpreted "primary benefit" to mean "more than fifty percent of the net proceeds of the solicitation." At the hearing on the defendant's motion to dismiss on April 16, 1982, the deputy district attorney suggested that the terms in question are "relatively self-explanatory." He further argued that "primary" means "first," "the most," or "the majority." We note that these definitions are not necessarily synonymous. Absent definite parameters for the determination of guilt or innocence, section 18–5–115(1)(a), C.R.S.1973 (1978 Repl.Vol. 8), creates a danger of arbitrary enforcement by "allowing the exercise of unbridled discretion by the police, judge, and jury." *Beruman,* 638 P.2d at 793. Thus, this section of the statute is unconstitutionally vague and violates the due process rights of the defendant.[6]

---

5. *U.S. Const.* amend. XIV, § 1; *Colo. Const.* art. II, § 25.

6. Section 18–5–115, C.R.S.1973 (1978 Repl.Vol. 8), provides for alternate and independent bases for criminal liability under subparagraphs (1)(b) and (1)(c), as follows:

Because we have found this section of the statute to be void for vagueness, we need not address the question of overbreadth. *See Enea,* 665 P.2d 1026.

### III.

During the course of proceedings in the trial court, the defendant filed a motion for a probable cause determination pursuant to section 16–5–204(4)(k), C.R.S.1973 (1978 Repl.Vol. 8).[7] After reviewing the grand jury transcripts, the district court dismissed count 3 of the indictment because it determined that the prosecution had not established probable cause to believe that the defendant committed the crime of tampering with a witness. The trial court ruled:

"The Court finds, after having reviewed the transcripts and the evidence presented before the Grand Jury, that there simply is not probable cause to believe that the Defendant violated that Statute."

We disagree and remand the case for arraignment on count 3.

### A.

The indictment alleges that the defendant attempted to induce the witness, Karen

"(1) A person commits charitable fraud if such person commits any of the following acts:

. . . .

"(b) Knowingly solicits contributions for a charitable purpose and in aid of such solicitation utilizes the name of another person or organization without the consent of such person or organization;

"(c) Solicits contributions for a charitable purpose and in aid of such solicitation uses a name, symbol, or statement so closely related or similar to that used by another organization or governmental agency that the use thereof is intentionally calculated to mislead the person to whom the solicitation is made."

Inasmuch as these provisions do not include the terms "primary benefit" and "primarily for the benefit," which we have found to be unconstitutionally vague, they are not affected by our ruling today. Section 2–4–204, C.R.S.1973 (1980 Repl.Vol. 1B). "[T]he rule is that where a portion of a statute is unconstitutional, the remaining portions will be upheld if they are complete in themselves, not dependent on the void portion, and, therefore, can be given legal effect." *Covell v. Douglas,* 179 Colo. 443, 449, 501 P.2d 1047, 1050 (1972), *cert. denied,* 412 U.S. 952, 93 S.Ct. 3000, 37 L.Ed.2d 1006 (1973). We hasten to add, however, that the defendant

Larsen, to unlawfully withhold her testimony, to absent herself from the official proceeding, and to avoid legal process.[8] Count 3 of the indictment is based on the following testimony given by Ms. Larsen to the grand jury:

"Q. Did he ever make any statements to you concerning your testimony before the Grand Jury?

"A. Yes. He told me if I, if ten people would go on the stand and testify, he said he would sue all ten people for perjury.

"Q. Was that, did he make any qualifications of that as to that it might depend on what they say or just if they would testify?

"A. Just if they would testify.

"Q. And in the context of his saying that, the way he said it, did you gather from that any implication that he was trying to, any impression that he was trying to make on you? Did you feel that he was trying to impress you with anything?

"A. I felt it was a threat, myself.

has not been charged with violating these provisions and we express no opinion as to their constitutional validity.

7. Section 16–5–204(4)(k), C.R.S.1973 (1978 Repl.Vol. 8), provides:

"The district court before which the indicted defendant is to be tried shall dismiss any indictment of the grand jury if such district court finds, upon the filing of a motion by the indicted defendant based upon the grand jury record without argument or further evidence, that the grand jury finding of probable cause is not supported by the record."

8. The text of count 3 of the indictment reads:

"COUNT THREE: That on or about July 15, 1981, in the County of El Paso, Colorado, MARK MOYER aka MARC GARFIELD did unlawfully, feloniously and intentionally attempt to induce KAREN LARSEN, a witness and a person the defendant believed was to be called as a witness in an official proceeding, to-wit: the July term of the El Paso County Grand Jury, to unlawfully withhold testimony, to absent herself from the aforesaid official proceeding to which she had been legally summoned and to avoid legal process summoning her to testify; In violation of C.R.S.1973, 18–8–605 as amended, Tampering with a Witness."

"Q. How did he say it? Was there anything in his voice, can you describe was he angry, calm and collected?

"A. Well, he always had a loud voice. I think he was threatening, you know.

"Q. Do you know what prompted him to say that? What was the conversation just immediately before that?

"A. Why I came to the District Attorney's office in the first place. He couldn't understand why I quit."

 The evidence presented at a preliminary hearing or to a grand jury must be viewed in the light most favorable to the prosecution. *Miller v. District Court,* 641 P.2d 966 (Colo.1982); *People v. Johnson,* 618 P.2d 262 (Colo.1980); *People v. Treat,* 193 Colo. 570, 568 P.2d 473 (1977). However, the evidence must establish probable cause as to each element of the crime. *Treat,* 193 Colo. 570, 568 P.2d 473; *Hunter v. District Court,* 190 Colo. 48, 543 P.2d 1265 (1975); *People v. Quinn,* 183 Colo. 245, 516 P.2d 420 (1973). The probable cause standard requires evidence sufficient to persuade a person of ordinary prudence and caution to have a reasonable belief that the defendant committed the crime charged. *Miller v. District Court,* 641 P.2d 966.

### B.

Section 18–8–605, C.R.S.1973 (1978 Repl. Vol. 8), provides:

"*Tampering with a witness.* (1) A person commits tampering with a witness if he intentionally attempts without bribery or threats to induce a witness or a person he believes is to be called as a witness in any official proceeding to:

"(a) Testify falsely or unlawfully withhold any testimony; or

"(b) Absent himself from any official proceeding to which he has been legally summoned; or

"(c) Avoid legal process summoning him to testify.

"(2) Tampering with a witness is a class 4 felony."

When the legislature adopted this provision as a part of the Colorado Criminal Code in 1971, it defined a new statutory crime. *People v. Francois,* 198 Colo. 249, 598 P.2d 144 (1979). The comments to the Criminal Code state that "[t]his section is taken from the Michigan Proposal section 5020, . . ." C.R.S.1963, 40–8–605 (1971 Perm.Cum. Supp.). The Michigan Committee Commentary to § 5020 of the *Michigan Proposal*[9] states that "[t]his provision is derived from the New York Revised Penal Law, § 215.10 and Model Penal Code § 241.6." In *Francois,* 198 Colo. 249, 598 P.2d 144, the court noted that the statute is derived from § 241.6 of the Model Penal Code.[10]

 The evil sought to be proscribed by the statute is limited to inducing a witness to testify falsely, to unlawfully withhold testimony, or to avoid legal process by leaving the state. The statute protects against conduct which would threaten the veracity and cooperation of witnesses by prohibiting any attempt to induce another to testify falsely or otherwise subvert the administration of justice. *Model Penal Code* § 241.6 comment. The statute applies to persons who attempt "by persuasion, general argument or pleading to persuade a prospective witness to disobey a subpoena or to withhold information on the stand." Committee Commentary, *Michigan Proposal* § 5020 at 414.

 Under the statute, it is not necessary that the defendant succeed in his attempt or actually induce the witness to do anything. *People v. Leonard,* 24 Misc.2d 300, 197 N.Y.S.2d 209 (1960); *Model Penal Code* § 241.6. Rather, "[a]ny sort of conduct directed to that end may suffice for liability." *Model Penal Code* § 241.6 at 168.

### C.

 The elements of the tampering with a witness charge as enumerated in the statute and as framed by the indictment are as follows: (1) the defendant; (2) intentionally; (3) attempted to induce; (4) a witness or a person the defendant believed to be

---

9. Michigan State Bar, *Michigan Revised Criminal Code* (Final Draft Sept. 1967).

10. American Law Institute, *Model Penal Code* § 241.6 (Proposed Official Draft 1962).

called as a witness; (5) in an official proceeding; and (6) to unlawfully withhold testimony, or to absent herself from the official proceeding, or to avoid legal process.

We must judge the defendant's conduct in the context of the elements of the crime, the legislative history, and the law governing probable cause determinations. Considered in the light most favorable to the People, the evidence and the reasonable inferences which can be drawn from it establish that the defendant told the witness that if she or ten people testified before the grand jury, the defendant would sue the witness or any of the ten persons for perjury. In addition, the defendant was aware that Ms. Larsen had talked with the district attorney at the time the statements were made. We hold that these facts establish probable cause to believe that the defendant committed the crime of tampering with a witness as alleged in the indictment. *Miller v. District Court,* 641 P.2d 966 (Colo.1982). Statements of the nature attributed to the defendant indicate they were designed to obstruct justice and are within the ambit of the statute.

This case is remanded to the district court for further proceedings in conformity with this opinion.