PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

William Edward WALKER,
Defendant-Appellee.

No. 83SA43.

Supreme Court of Colorado,
En Banc.

Jan. 23, 1984.

Robert R. Gallagher, Jr. Dist. Atty., Catherine DiSante, Deputy Dist. Atty., Littleton, for plaintiff-appellant.

David F. Vela, State Public Defender, Michael Heher, Deputy State Public Defender, Denver, for defendant-appellee.

KIRSHBAUM, Justice.

The People, pursuant to section 16–12–102, C.R.S.1973 (1978 Repl.Vol. 8), appeal the trial court's dismissal of an information charging defendant, William Edward Walker, with aggravated robbery,[1] theft[2] and crime of violence.[3] We reverse and remand with directions.

I.

The transcript of defendant's preliminary hearing reveals the following pertinent facts. During the morning of October 4, 1982, two men, one carrying a revolver, robbed the St. Theresa's Federal Credit Union in Arapahoe County. Some $14,370 worth of Republic traveler's checks were taken during ·the robbery.

On October 6, 1982, Officer Harvey Surrena, of the Aurora Police Department, while working off-duty at the People's

---

1. § 18–4–302(1)(b), C.R.S.1973 (1978 Repl.Vol. 8).

2. § 18–4–401, C.R.S.1973 (1978 Repl.Vol. 8).

3. § 16–11–309, C.R.S.1973 (1978 Repl.Vol. 8) (1983 Cum.Supp.).

Bank & Trust in Aurora, questioned three individuals about their efforts to cash four Republic traveler's checks at that bank. One of them, Michelle Birch, informed Surrena that she had been asked by some persons driving a blue Ford sedan to get one of her friends to pass traveler's checks. At that moment, a blue Ford sedan occupied by two persons drove by, and Ms. Birch stated, "That's them there." Surrena jumped into a patrol car driven by another officer, and the two began to pursue the Ford. At one point the Ford suddenly braked and then sped up again. Surrena observed that only one person remained in the car, and his fellow officer aired an alert that one male suspect was running west from the 1900 block of Elmira street near East Montview Boulevard. The Ford stopped at the 1700 block of Elmira, at which time Surrena began running west.

Aurora Police Officer Richard Ferranti, who had responded to the aired alert by driving his patrol car to 16th and Beeler Streets, observed a man running down East 16th Avenue and at the same time trying to remove a red velour pullover shirt. He watched the suspect pound on the door of a house and enter it. Ferranti called for assistance, and Surrena as well as other officers converged on the residence. Ferranti knocked on the door and asked Phyllis Crawford, who answered, where the man with the red shirt had gone. She responded that he had run into the house and then out through a back window. With her permission, Ferranti entered a back room of the house and discovered defendant sweating profusely and putting on a black shirt. Defendant was arrested and removed from the residence.

Upon further questioning, Ms. Crawford told Ferranti that defendant and another person entered her house; that defendant gave a business card to Marvin Harris, who was in the house at the time, and said "Call

him, call him, the police are outside and I have got to get rid of this stuff"; and that Ferranti might find what he was seeking if he looked under a couch. A subsequent search of the residence revealed a red velour pullover and several Republic traveler's checks with serial numbers matching those which had been taken from the credit union.

Following defendant's arrest, Aurora police officials prepared a photographic array which included a photograph of defendant. The array was shown by Officer Shultz to Wallace Westerman, manager of the credit union, Dorothy Whipkey, a part-time employee, and two other persons, all of whom had witnessed the October 4 robbery. Mr. Westerman did not positively identify any of the photographs.[4] Ms. Whipkey selected defendant's picture from the array and told Officer Shultz that he "was the one she felt was the robber with the gun," that "his facial features and hair looked very much the same," and that "it was a very, very close likeness to the robber." When Ms. Whipkey later attended a physical lineup, she identified defendant as "the person ... she felt was the robber that had the gun."

At defendant's preliminary hearing, held on January 6, 1983, Mr. Westerman was unable to identify anyone in the courtroom as being involved in the robbery. Ms. Whipkey was asked "if you see anyone that you can identify as a participant in this particular robbery," and replied that "I can't positively say." When asked if she saw anyone that "might have been involved" in the robbery, she testified that defendant bore "a good likeness" to the robber who had the gun.

Following the presentation of all the testimony, the trial court stated its concern that "a trial of this case would not result in any finding beyond a reasonable doubt as to the identity of the defendant."[5] After

---

4. Officer Shultz testified that Mr. Westerman did select two photographs from the nine-man array, one of which was of defendant, as depicting persons "who looked similar" to the men who robbed the credit union.

5. The trial court's comments at this stage of the proceedings were as follows:

"My concern is that even though it may be that I have to grant the District Attorney all reasonable inferences, I have to view it in the

hearing further argument, the trial court dismissed the information with the following comments:

"The fact of recent possession of traveler's checks is a very important element of proof and I think that would be a basis for the Court finding probable cause. However, I am not going to find probable cause in this case because I think it is an exercise in futility, a waste of time of the Court and the jury in an effort to try to identify this man when both the victims are going to have to testify that they can not identify him other than Ms. Whipkey's statement that there is some resemblance. I don't think the Court should waste its time in going through the exercise of having the jury come back and say we can't determine beyond a reasonable doubt that this is the party."

## II.

The People argue that the trial court failed to apply the appropriate test for determining probable cause and that the evidence was sufficient to meet the correct standard. We agree.

■■■ Crim.P. 5 authorizes the screening mechanism of a preliminary hearing in cases not initiated by indictment to ensure that the government possesses sufficient evidence to support the legal determination that probable cause exists to believe that a particular defendant committed a particular offense. *See People v. Taylor,* 655 P.2d 382 (Colo.1982); *Miller v. District Court,* 641 P.2d 966 (Colo.1982); *People v. Johnson,* 618 P.2d 262 (Colo.1980); *People v. Treat,* 193 Colo. 570, 568 P.2d 473 (1977); *Hunter v. District Court,* 190 Colo. 48, 543 P.2d 1265 (1975). This procedural device is designed in part "to prevent hasty, malicious, improvident, and oppressive prosecutions, ... to avoid both for the defendant and the public, the expenses of a public trial, ... and to discover whether there are substantial grounds upon which a prosecution may be based." *People ex rel. Leidner v. District Court,* 198 Colo. 204, 207, 597 P.2d 1040, 1042 (1979) (quoting *Thies v. State,* 178 Wis. 98, 103, 189 N.W. 539, 541 (1922)). The trial court must determine whether the evidence presented by the People is sufficient to permit a person of ordinary prudence and caution to form a reasonable belief that the accused committed the offense or offenses charged. *People v. Moyer,* 670 P.2d 785 (Colo.1983); *People v. Hrapski,* 658 P.2d 1367 (Colo.1983); *Miller v. District Court, supra.* The evidence must be viewed in the light most favorable to the prosecution, *People v. Moyer, supra,* it need not be sufficient to support a conviction at trial. *People ex rel. Leidner v. District Court, supra.*

Here, the trial court in effect required the People to introduce evidence sufficient to prove defendant's guilt beyond a reasonable doubt. Such level of proof is not required at preliminary hearings. *Miller v. District Court, supra; People v. Luttrell,* 636 P.2d 712 (Colo.1981). Thus, the trial court erred in imposing the more stringent standard upon the prosecution.

## III.

■■■ While ordinarily a trial court's probable cause determination will not be reviewed on appeal, limited exceptions to this general rule have been applied where a trial court fails to follow the proper rules and standards governing preliminary hear-

---

light most favorable to the District Attorney in this hearing, I am concerned that a trial of this case would not result in any finding beyond a reasonable doubt as to the identity of the defendant.

"That is my concern. I think that one of the purposes of a hearing of this sort is to avoid wasting the time of the Court and all parties involved in a trial in which there is no likelihood of a conviction. It seems the two victims are unable to identify this defendant with any degree of certainty. Ms. Whipkey has indicated there is some likeness, some similarity. Certainly that is not going to support a jury verdict beyond a reasonable doubt.

"I am afraid it is going to be a time wasting procedure to go into a trial with this type of evidence. I understand I am to make all reasonable inferences and the recent possession of traveler's checks is very important evidence. I will hear you further on that before I make a ruling."

ings. *People ex rel. Leidner v. District Court, supra.* Defendant here was tentatively identified by Ms. Whipkey on two occasions as a participant in the October 4 robbery. Defendant was arrested on October 6 in a residence containing Republic traveler's checks whose serial numbers matched those taken from the credit union, and when viewed most favorably to the People's position, the evidence established that defendant participated in the distribution of such checks to others that same day. We find this evidence sufficient to permit a person of ordinary prudence to reasonably believe that defendant committed the offenses charged. Accordingly, we reverse the order of dismissal and remand to the trial court with directions to reinstate all charges filed against defendant, to bind the case over for trial, and to conduct such further proceedings as may be warranted.