The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Virginia M. LANCASTER, Defendant-Appellee,

No. 83SA419.

Supreme Court of Colorado, En Banc.

July 9, 1984.

Warwick Downing, Dist. Atty., 22nd Judicial Dist., Cortez, William H. Higgins, Sp. Deputy Dist. Atty., Denver, for plaintiff-appellant.

Kelly R. McCabe, Cortez, for defendant-appellee.

ERICKSON, Chief Justice.

The prosecution appealed from an order of the district court dismissing an information which charged the defendant, Virginia Lancaster, with felony theft, section 18–4–401, 8 C.R.S. (1978). The trial court dismissed the information at the conclusion of the preliminary hearing on the ground that the prosecution failed to establish probable cause that the defendant committed the crime of theft. We reverse.

## I.

The transcript of defendant's preliminary hearing reveals the following facts. Pauline Maylott was employed as an activities director at the Vista Grande Nursing Home (Vista) in Cortez, Colorado, from 1977 through the spring of 1983. During that time, she and defendant, a business office manager at Vista, became close friends.

Maylott was assigned the duty of taking patients' income checks[1] received each month at the Vista business office to the various patients for endorsement. The endorsed checks were then returned by her to the business office where both she and the defendant would "endorse the checks as witnesses."

Maylott testified that most of the checks were then posted to each patient's ledger account and deposited in Vista's general business account. A small number of checks specially selected by the defendant were, however, placed in individual envelopes and, at defendant's request, taken by Maylott to Citizens State Bank (Citizens) to be cashed. The money was delivered to

defendant who was required to credit the full amount of the cash to the respective patient's account.

K.G. Counts, an investigator for the Medicaid Fraud Unit of the Attorney General's office, testified that income received by the patients was ordinarily applied first to the patients' individual accounts at Vista. If, as was often the case, the income received did not fully cover the cost of the patient's care at Vista, the defendant, as business manager, was authorized to submit medical claim forms to the Colorado Department of Social Services for the outstanding balance. Counts stated that the Medicaid program would be over-billed by Vista to the extent that money received by the patients was not properly credited to their accounts.

Counts testified that Walter Epting, a certified public accountant employed by the Medicaid Fraud Unit, examined the patient ledger accounts and the cash receipts journal at Vista and determined that most of the checks cashed at Citizens and and returned to the defendant were never posted to the patient ledger accounts. The few checks that were posted were in amounts significantly less than the amounts received initially at the Vista business office.

At the conclusion of the prosecution's evidence, defense counsel moved to dismiss the charge on the ground that the evidence did not support a finding that there was probable cause to believe that the defendant committed the crime of theft. After a lengthy discussion between counsel and the district court regarding the standard to be applied in determining probable cause at a preliminary hearing, the district court dismissed the information, stating: "[Y]ou could infer that possibly [defendant] took it, but that does not indicate that she probably took it. . . ."

## II.

The prosecution argues that there was probable cause established to show that

---

1. These checks were in large part veterans administration and social security checks.

defendant committed the crime of theft. We agree.[2]

The preliminary hearing is a screening device used to determine whether probable cause exists to support a charge that an accused committed a particular crime. *People v. Treat,* 193 Colo. 570, 568 P.2d 473 (1977); *Maestas v. District Court,* 189 Colo. 443, 541 P.2d 889 (1975). The probable cause standard requires evidence sufficient to persuade a person of ordinary prudence and caution to have a reasonable belief that the defendant committed the crime charged. *People v. Moyer,* 670 P.2d 785 (Colo.1983). The evidence presented must be viewed in the light most favorable to the prosecution. Evidence sufficient to sustain a conviction is not necessary at a preliminary hearing. *People v. Johnson,* 618 P.2d 262 (Colo.1980). If there is a conflict in testimony, the district court must draw an inference for the prosecution. *Miller v. District Court,* 193 Colo. 404, 566 P.2d 1063 (1977). The duty of the district court in this case was to evaluate the sufficiency of the evidence presented at the hearing to establish probable cause that the defendant committed felony theft under section 18–4–401, 8 C.R.S. (1978).[3]

Here, the district court found expressly that, on numerous occasions, Maylott cashed, at defendant's request, patients' income checks and turned the cash over to the defendant.[4] The record is clear that the defendant, who as office manager had sole responsibility for crediting the amount of each check to the patient's ledger account, frequently failed to post the cash to the ledger.[5] Counts testified that, in one instance, the wife of a patient turned over a large amount of cash to the defendant to be applied to the patient's account and received in return a handwritten receipt for the cash signed by the defendant. The investigator's later examination of the particular patient's ledger revealed that the cash had not been credited to the patient's account.[6] In our view, the evidence was

---

2. The prosecution asserts also that the district court failed to apply the appropriate test in determining probable cause. Although the prosecution argued the correct standard before the trial court, it is not clear whether it was, in fact, applied. Because we rule that probable cause was established as a matter of law, we need not reach the issue.

3. Section 18–4–401(1), 8 C.R.S. (1978), provides in pertinent part:

(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:
(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or
(b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or
(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; or
(d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

4. The district judge stated:
[I]t is clear to me the People have established exactly as you [the prosecuting attorney] have described ... that the money stopped with the money going from [Maylott] to [defendant]....

5. At the preliminary hearing Counts testified that:
[Defendant] stated that her duties included the receipt of patient revenues, the posting of the revenues to the appropriate patient ledgers and other documents, the preparation of deposit slips and transmittal of the monies to the hospital business office and the preparation of claims to be submitted to the state for reimbursement under the Medicaid program. Counts stated further that, according to David Hennegan, the controller of the Montezuma County Hospital District, defendant:
[R]eceipted for or received all of the incoming revenues for the patients, posted the appropriate ledgers and accounting records, transmitted or took the funds over to the hospital business office for consolidated deposit and then would prepare the claims to the state for Medicaid reimbursement for signature of the administrator of the district.

6. The following discussion took place at the preliminary hearing:
Q [Prosecution] Did you ask her [defendant] to explain what had happened to the money....
A [Counts] As I recall, she indicated that she had received the money, but the responses—or the question from me would be

sufficient as a matter of law to establish probable cause with respect to each element of the crime charged. *See People v. Holder*, 658 P.2d 870 (Colo.1983).

Accordingly, we reverse the order of dismissal and remand to the trial court with directions to reinstate the charge filed against the defendant and to bind the case over for trial.

"[W]here was the money?" or "Where did the money go?" or something like that and her

respond would be "I don't know."