The PEOPLE of the State of Colorado, Petitioner-Appellant,

In the Interest of M.V., Appellee,

A Child and Concerning: F.V., Respondent-Appellee.

No. 86SA66.

Supreme Court of Colorado, En Banc.

Sept. 8, 1987.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy Dist. Atty., Brighton, for petitioner-appellant.

Hyland & Minuck, Marcia Minuck, Denver, for appellees.

ROVIRA, Justice.

The People appeal orders of the Adams County District Court dismissing a delinquency petition against the appellee, M.V., a juvenile, because the People failed to establish probable cause that M.V. had committed felony child abuse and denying

permission for the People to refile charges against M.V. We conclude that the district court erred in finding that the People failed to establish probable cause and accordingly reverse.

## I.

On August 7, 1985, the People filed a delinquency petition in the juvenile division of the Adams County District Court alleging that M.V. had committed an act that would have been a felony if she had been an adult. The petition charged M.V. with felony child abuse in violation of section 18–6–401(1) & (7), 8B C.R.S. (1986). On the same day, the People also filed a request for transfer to a felony division of the district court. On November 22, 1985, a combined transfer hearing and preliminary hearing was held.

The People presented three witnesses at the hearing. M.V.'s Aunt Rose testified that on the night of June 15, 1985, she agreed to baby-sit with M.V.'s infant daughter, Yvette. She stated that M.V. and her boyfriend, Mike, the father of the baby, brought the infant to her house in Brighton about 7 p.m. that night, and the baby appeared healthy at that time. She testified that the baby slept until about 9 p.m. when she fed her and changed her diapers. The infant then went back to sleep until about 11 p.m. when Rose retired for the night and took the infant to her bedroom. About midnight, the baby awoke, and Rose fed her and changed her once again. About 1 a.m., M.V. and Mike came to Rose's downstairs bedroom and picked up the baby, whereupon M.V. went upstairs where she remained for the night. Rose did not hear any noises later that night, although she said she was a sound sleeper. Rose testified that the child had not been injured during the time she cared for her.

Dr. Richard Krugman, a pediatrician and expert in the area of prevention and treatment of child abuse and neglect, testified that on the following day, June 16, 1985, Yvette was taken to University Hospital suffering from repeated seizures. He stated that the infant was diagnosed as suffering from a skull fracture; chronic subdural hematomas, which refers to bleeding between the skull and brain; retinal hemorrhages, which indicate head injury; and several fractures of leg bones. Although one of the leg fractures was at least two weeks old at that time, and the exact timing of the skull fracture could not be pinpointed, Dr. Krugman estimated that the subdural hematomas and retinal hemorrhages were probably caused by head injuries sustained between 1 and 4 a.m. that morning. The estimate was based on reports he received that the child was sleeping and eating normally until 1 a.m. but began having seizures about 4 a.m. and continued having them that day. The retinal hemorrhages were also "fresh," apparently indicating they had occurred recently and probably at the same time as the seizures.

Dr. Krugman was of the opinion the skull fracture was caused by a substantial blow, either a blow to the head or her head being struck against an object; the subdural hematomas probably occurred in conjunction with the fracture or as a result of violent shaking that occurred sometime after the fracture had been sustained; and that the leg fractures were probably caused by someone pulling on the infant's legs with substantial force. He also opined that the injuries sustained by Yvette were serious since subdural hematomas can result in permanent bodily injury, developmental delays, retardation and in some cases death.

Dr. Krugman testified that he interviewed Mike and M.V. at the time Yvette was hospitalized. They told him that Yvette had been well when they left her with Rose the previous night. Mike had said the baby was "a little fussy" when they returned about 1 a.m., but "then things were okay." About 4 a.m., Dr. Krugman was told, the baby began having seizures. Mike and M.V. could not explain how the child had been injured, and this led him to suspect child abuse.

Brighton Police Sgt. Paul White testified that as a result of his investigation, he had learned that Mike and M.V. had returned to

Rose's house at about 1 a.m. on the morning in question; that Mike had left about 2 a.m.; and that only M.V. had been with the baby from 2 until 4 a.m. White testified that his interviews revealed that most everyone felt that Mike and M.V. were "good with the baby," that "they seem to love the baby," and that "the baby was well cared for." However, some persons he had interviewed had told him that M.V. "was a little inexperienced and wasn't totally able to cope with the baby's crying and such things as that." Also, on many occasions when the infant needed special care because of a respiratory ailment, M.V. "would give the baby to Mike and let him handle it."

After the close of the hearing, the trial court issued a memorandum opinion and order. The court held first that a transfer of the case from juvenile court to district court was not appropriate, a holding not now in dispute. Then, the court moved to the "closer issue" of probable cause. In analyzing this issue, the court first noted that it discerned "two different approaches" in our past cases defining the applicable standard of probable cause. In some cases, the court noted, we have said: "The probable cause standard requires evidence sufficient to induce a person of ordinary prudence and caution conscientiously to entertain a reasonable belief that the defendant may have committed the crime charged." In other cases, the court noted, we have applied the same standard without the words "may have." The court conceded that "others might not find a conflict in these cases," but concluded that the word "may" connotes a "more tenuous standard."

Analyzing the facts of this case under these "different" standards, the court concluded that "one could say that [M.V.] 'may have committed a crime,'" but if the stricter standard, "has committed the crime," were applied, the court concluded it could not find probable cause. Ultimately, it determined that the stricter standard was the proper one and dismissed the case.

The court stated: "[T]here is no question that the victim was seriously injured and most probably non-accidentally. Yet, there is nothing that directly ties in the victim's injury with [M.V.]. Certainly one can speculate, but the evidence presented does not establish this." The court gave little credence to the evidence that M.V. was present with the infant at the time the injuries were suffered because the evidence did not exclude the possibility that Mike had injured the child and because the estimated time frame in which the infant sustained her injuries was vague and speculative.

## II.

In analyzing our prior cases, the trial court paid close attention to the precise wording of our decisions but failed to recognize the general thrust of those decisions. We have frequently held that trial courts should carefully evaluate all of the evidence in light of well established principles before dismissing criminal cases after a preliminary hearing. *People v. Stewart,* 739 P.2d 854 (Colo.1987); *People v. Spurrier,* 712 P.2d 486 (Colo.1986); *People v. Sabell,* 708 P.2d 463 (Colo.1985); *People v. Nygren,* 696 P.2d 270 (Colo.1985); *People v. Lancaster,* 683 P.2d 1202 (Colo.1984); *People v. Walker,* 675 P.2d 304 (Colo.1984); *People v. Holder,* 658 P.2d 870 (Colo.1983); *People v. Hrapski,* 658 P.2d 1367 (Colo. 1983); *People v. Moyer,* 670 P.2d 785 (Colo. 1983); *Miller v. District Court,* 641 P.2d 966 (Colo.1982); *People v. Thompson,* 655 P.2d 416 (Colo.1982); *People v. Johnson,* 618 P.2d 262 (Colo.1980); *People ex rel. VanMeveren v. District Court,* 195 Colo. 1, 575 P.2d 405 (1978); *People v. Treat,* 193 Colo. 570, 568 P.2d 473 (1977); *Hunter v. District Court,* 190 Colo. 48, 543 P.2d 1265 (1975).

Repeatedly, we have noted that a preliminary hearing serves a limited purpose; it is not to be construed as a "mini-trial." *Maestas v. District Court,* 189 Colo. 443, 446, 541 P.2d 889, 891 (1975); *Hunter,* 190 Colo. at 51, 543 P.2d at 1267. The preliminary hearing serves instead as a screening device to test the sufficiency of the prosecution's case before an impartial judge and weed out the fatally weak case.

*Maestas,* 189 Colo. at 446, 541 P.2d at 891; *see also Stewart,* 739 P.2d at 855; *Lancaster,* 683 P.2d at 1204. The sole issue at a preliminary hearing is whether probable cause exists to support the prosecution's charge that the accused committed a particular crime. *See* Crim.P. 7(h)(2); *Nygren,* 696 P.2d at 272.

In making this determination, a trial court must view the evidence presented in the light most favorable to the prosecution. *Stewart,* 739 P.2d at 855; *Nygren,* 696 P.2d at 272. This means that the trial court must draw all reasonable inferences in favor of the prosecution. *Spurrier,* 712 P.2d at 488; *Sabell,* 708 P.2d at 465. If testimony is conflicting, the court must draw the inference favorable to the prosecution. *Nygren,* 696 P.2d at 272–73; *Lancaster,* 683 P.2d at 1204. Hearsay evidence may form a substantial portion of the evidence adduced by the prosecution to show probable cause. Crim.P. 7(h)(3); *Nygren,* 696 P.2d at 272; *VanMeveren,* 195 Colo. at 3–4, 575 P.2d at 407. The trial court may not disregard the testimony of a witness favorable to the prosecution unless the testimony is implausible or incredible as a matter of law. *Nygren,* 696 P.2d at 273; *Hunter,* 190 Colo. at 52–53, 543 P.2d at 1268.

The proper standard of probable cause requires only that the prosecution present evidence sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed the crime. *E.g., Stewart,* 739 P.2d at 855; *Nygren,* 696 P.2d at 272. Although on occasion we have framed the standard as "a reasonable belief that the defendant *may have* committed the crime," this additional language merely reflects our consistently expressed view that the prosecution's case should not be judged too strictly at this early stage in the proceedings. *E.g., Spurrier,* 712 P.2d at 488; *Treat,* 193 Colo. at 574, 568 P.2d at 474.

We have often stated that the prosecution is not required to produce at a preliminary hearing evidence that is sufficient to support the defendant's conviction. *Stewart,* 739 P.2d at 855; *Sabell,* 708 P.2d at 465; *Treat,* 193 Colo. at 573, 568 P.2d at 474. Thus, it is not necessary that the prosecution show beyond a reasonable doubt that the defendant committed the crime; nor is it even necessary to show the probability of the defendant's conviction. *Hunter,* 190 Colo. at 51, 543 P.2d at 1267.

 In applying these legal standards, the trial court erred in determining that the prosecution had failed to show probable cause that M.V. had committed the crime. In insisting on a "direct" link between M.V. and the injuries sustained by her child, the court failed to draw all reasonable inferences in favor of the prosecution. Viewed in a light most favorable to the People, the evidence established that the child suffered serious, nonaccidental head injuries sometime between 1 and 4 a.m. on July 16, 1985; that M.V. was present with the child between 1 and 4 a.m.; that Mike was also present with the child between 1 and 2 a.m. but "things were okay" with the infant during that period; that between 2 and 4 a.m. M.V. was the only person with the child; that on occasion M.V. had demonstrated an inability to cope with the child's crying; and that at 1 a.m. on the morning in question the infant had been "a little fussy." We believe this evidence, when viewed in the light most favorable to the prosecution, is sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that M.V. caused the injuries inflicted upon her infant daughter.[1]

Accordingly, the trial court's order is vacated, and the case is remanded to the trial court with directions to reinstate the petition and to conduct such further proceedings as may be appropriate.

---

**1.** Additionally, we believe that the trial court erred in assuming that M.V. could not be guilty of child abuse had Mike been the one who injured the child. *E.g., People v. Mann,* 646 P.2d 352 (Colo.1982); *People v. Thompson,* 655 P.2d 416 (Colo.1982). Under Colorado law, "[a] person commits child abuse if he causes an injury to a child's life or health or permits a child to be unreasonably placed in a situation which poses a threat of injury to the child's life or health." § 18–6–401, 8B C.R.S. (1986).

ERICKSON, J., specially concurs in the result only.

KIRSHBAUM and MULLARKEY, JJ., join in the special concurrence.

ERICKSON, Justice, specially concurring in the result only:

A preliminary hearing is a screening device to determine whether probable cause exists to believe that the defendant committed the crime charged. *People v. Quinn,* 183 Colo. 245, 516 P.2d 420 (1973). The preliminary hearing is not a mini-trial and greater evidentiary latitude is granted to the prosecution to establish probable cause at the preliminary hearing than would be permitted in proving the commission of the crime by the defendant at the time of trial. *Maestas v. District Court,* 189 Colo. 443, 541 P.2d 889 (1975). In determining whether the evidence is sufficient to bind the defendant over for trial, the trial court must view the evidence in the light most favorable to the prosecution, and proof necessary to support a conviction is not required. *People v. Treat,* 193 Colo. 570, 568 P.2d 473 (1977). The sole issue at a preliminary hearing is whether evidence has been produced which establishes probable cause that the defendant committed the crime charged. *People v. Brisbin,* 727 P.2d 374 (Colo.1986).

In this case, the minor child suffered severe injuries during the time she was in the sole custody of her mother, the defendant. The seizures, according to Dr. Richard Krugman, an expert witness who worked with child abuse victims, occurred soon after the infliction of the head injuries of the type suffered by the victim. Dr. Krugman also testified that the child was clinically well prior to the mother's taking custody. The child, according to the father and the aunt, was not suffering from seizures and had no injuries when the mother took custody. The occurrence of the seizures, which are closely connected to the time that the trauma occurred, circumstantially ties the defendant to the commission of the crime. Although *Treat,* 193 Colo. at 574, 568 P.2d at 474–75, contains the statement that the defendant "may have" committed the crime, such a standard has never been the test formulated by our case law. Crim.P. 7(h) repeatedly uses probable cause as the standard. Probable cause cannot be established by proof that the defendant may have committed the crime. The term "may have," as used in *Treat* and its progeny, was an inadvertent and unfortunate use of words that has no place in preliminary hearing jurisprudence. To the extent that the term "may have" has been used in formulating a test for probable cause, I would disavow the criteria.

When the evidence before the trial is sufficient to establish probable cause and the case is dismissed, reversal is required. *People v. Spurrier,* 712 P.2d 486 (Colo. 1986). Here, the evidence was sufficient to establish probable cause that the defendant committed the crime charged, and I would, accordingly, reverse the trial court and reinstate the charges.

I am authorized to say that Justice KIRSHBAUM and Justice MULLARKEY join in the special concurrence.