The PEOPLE of the State of Colorado, Petitioner,

v.

The DISTRICT COURT OF COLORADO'S SEVENTEENTH JUDICIAL DISTRICT and One of its Judges, the Honorable Philip F. Roan, Respondents.

No. 90SA402.

Supreme Court of Colorado, En Banc.

Dec. 17, 1990.

James F. Smith, Dist. Atty., Seventeenth Judicial Dist. Steven L. Bernard, Chief Trial Deputy, Brighton, for petitioner.

Vitek & Doniger, P.C., Anne M. Vitek, Jeffrey D. Doniger, Denver, for defendant Vivian Cloud.

Justice VOLLACK delivered the Opinion of the Court.

The People petition this court under C.A.R. 21[1] for a rule to show cause why the trial court should not be required to reinstate the original class 2 felony child abuse count against defendant, Vivian M. Cloud (the defendant). We now make the rule absolute.

## I.

On May 4, 1990, the defendant was charged with a class 2 felony for child abuse resulting in death, in violation of section 18–6–401(1) and (7)(a)(I), 8B C.R.S. (1986),[2] and conspiracy to commit the offense, in violation of section 18–2–201, 8B C.R.S. (1986 & 1990 Supp.). A preliminary hearing was held on June 1, 1990, to determine whether there was probable cause to support the charges.

The People's evidence at the hearing established that around midnight on Thursday, April 26, 1990, the Aurora police received an emergency telephone call from the defendant, asking them to come to her residence. Upon arrival, the police found a badly burned three-year-old Steven Jay. The child was transported to Presbyterian Aurora Hospital where he was pronounced dead.

An Aurora police detective questioned Steven's mother, Jauline Jay (the mother), as to the cause of the boy's injuries. The mother stated that on Tuesday evening she had filled her bathtub with hot water and placed some clothes in the water to soak. She then went into the living room, turned on the stereo, and proceeded into the kitchen. Upon returning to the living room, she heard a scream. She then went into the bathroom where she found Steven sitting in the tub. After removing Steven from the tub, she summoned her aunt, the defendant, to the house. The mother told the police that the defendant was a registered nurse and that the defendant had assured her Steven would be fine. Other testimony indicated that the scalding of Steven's body was not accidental, as the mother suggested.

The defendant told the police that when she arrived at the mother's house, Steven was burned and was lying on a towel. She subsequently wrapped the child in a sheet and a blanket and took him to her nearby apartment to treat him. Wearing sterile

---

1. **Rule 21. Procedure in Original Actions.**
   (a) **Writs Under Constitution.** *This Rule* applies only to the original jurisdiction of the Supreme Court to issue writs as provided in Section 3 of Article VI of the Colorado Constitution as amended. (See Rule 106, C.R.C.P., for remedial writs in the district court.) Relief in the nature of prohibition may be sought in the Supreme Court where the district court is proceeding without or in excess of its jurisdiction or where the district court has granted or denied change of venue in actions in rem or in actions where the statute prescribes the forum.

2. Section 18–6–401 provides in relevant part:
   (1) A person commits child abuse if he causes an injury to a child's life or health or permits a child to be unreasonably placed in a situation which poses a threat of injury to the child's life or health.
   . . . .
   (7)(a) Where death or injury results, the following shall apply:
   (I) When a person acts knowingly or recklessly and the child abuse results in death to the child, it is a class 2 felony.

gloves and using sterile pads, the defendant washed Steven's burns every four to six hours with cool, sterile water and a scrub solution. She wrapped the burned areas with sterile gauze and gave the boy Tylenol Elixir to ease his pain. When the defendant first began caring for Steven, she had observed blisters on his skin, which eventually disappeared. As Steven's burned skin began to flake off, the defendant massaged the wounds with sterile gauze, which caused minor bleeding inside the burn area. The defendant stated that Steven expressed his pain with moans and tearing in his eyes.

By her own account, the defendant cared for Steven from Monday evening, April 23, 1990, until Thursday, April 26, 1990, when the police arrived at her home, contrary to the mother's statement that the accident occurred on Tuesday. On Thursday, Steven's condition had deteriorated. He had not urinated at all, he had become quite lethargic, and he was having difficulty breathing. Eventually, Steven's breathing stopped, at which point the defendant called the police.

The defendant's fourteen-year-old daughter, Ellena Cloud, testified that during Steven's stay at her family's apartment, she observed the defendant and Mary Brown, Ellena's aunt, treating Steven. She recalled that Steven was hurt on his legs and that he was unable to play or move around the house by himself. Ellena also smelled a bad odor in the house when Steven was present, which she mentioned to the defendant. Ellena discussed with the defendant the possibility of taking Steven to the hospital should his condition deteriorate. According to Ellena, the defendant told her not to talk to anyone about Steven's injuries.

The defendant's twelve-year-old daughter, Sarai Cloud, also testified. Sarai stated that Steven's legs were burned and that he had "water pockets" on his legs about an inch and one-half to two inches in size. She observed the defendant cleaning Steven's burns about three times a day. According to Sarai, the defendant did not respond to her suggestion that Steven be taken to the hospital. As with Ellena, the defendant told Sarai that she should not discuss Steven's condition with anyone.

Dr. William Bailey, a pediatric surgeon and director of the Burn Center at Children's Hospital, offered expert testimony based on photographs of Steven's burns. He testified that Steven's condition was compatible with an immersion burn, or "dunking injury," which occurs when a child is placed in a tub of hot water. It was Dr. Bailey's expert opinion that Steven was placed in the tub and held there.

According to Dr. Bailey and Dr. Jill Gould, the forensic pathologist who performed the autopsy on Steven, the severity of Steven's burns ranged from second- to fourth-degree burns. Second-degree burns partially injure the skin's thickness, leaving enough live tissue to allow the skin to heal. Third-degree burns damage the full thickness of the skin so that the skin is unable to regenerate. Fourth-degree burns extend all the way to the bone. The second-degree burns would have caused Steven pain. His deeper burns would have caused him little pain, if any, because they actually burn off the nerve endings.

Both experts testified that approximately forty percent of Steven's body was burned and the severity of his burns would have made the boy extremely ill. Dr. Bailey believed that it would have been difficult for anyone not to recognize that the child was severely ill. He estimated that Steven probably went into shock within eight to twelve hours after he was burned. As a result, he probably would have exhibited a rapid pulse, poor urinary output, disorientation, low core body temperature, and possibly apprehension, anxiety, and oxygen deprivation. Dr. Bailey testified that children with burns as severe as Steven's are generally expected to survive after undergoing the Burn Center's treatment regimen.

According to Dr. Bailey, the first twenty-four hours of burn-patient therapy are critical in managing the onset of shock from the burn. After this danger subsides, the child remains at risk of suffering shock from systemic infection. Had Steven been

taken to the hospital, he would have received the general systemic support vital to the prevention of shock, which includes intravenous fluid therapy management and fluid resuscitation. Concomitantly with the shock management, topical agents would have been applied to the burn itself to prevent the spread of infection.

Pseudomonas is the most common bacteria causing burn infections. A wound infected with pseudomonas has a yellow-green or bluish color and a distinctive odor. After finding pseudomonas in Steven's wounds, lungs, and blood, Dr. Gould concluded that Steven died of an overwhelming bacterial infection secondary to the burn injuries on his body.

At the conclusion of the evidence, the trial court stated:

[A]s to Ms. Brown and Ms. Cloud the Court will find that there is probable cause to believe that the crime of child abuse was committed, resulting in death. There is also probable cause to believe that Ms. Brown and Ms. Cloud committed that crime. However, the Court believes that it's much more appropriate ... that the ... charge on which they should be bound over is not a Class 2 felony but a Class 3 felony where a person acts with criminal negligence and criminal negligence of course is defined in 18–1–501 and it certainly seems to fit the case here from the evidence that the Court's heard, much, much more so than knowingly, willfully or recklessly fits the case. The Court will bind it over as to those two defendants as to the ... Class 3 felony with that culpability element.

## II.

■ The issue before us is whether the trial court abused its discretion by finding *sua sponte* that there was probable cause to support the lesser culpability standard of criminal negligence rather than the knowing or reckless standard charged by the People. We have held that a preliminary hearing serves the limited purpose of determining "if there is probable cause to believe that an offense has been committed and that the person charged committed it."

§ 16–1–104(14), 8A C.R.S. (1986). *See, e.g., People v. Fisher*, 759 P.2d 33, 36 (Colo. 1988); *People in the Interest of M.V.*, 742 P.2d 326, 328–29 (Colo.1987). The standard for finding probable cause requires only that the prosecution present evidence sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed the crime. *See, e.g., People v. District Court*, 779 P.2d 385, 388 (Colo.1989); *Fisher*, 759 P.2d at 36; *In the Interest of M.V.*, 742 P.2d at 329. It is therefore unnecessary for the prosecution to show beyond a reasonable doubt that the defendant committed the crime, or even the probability of the defendant's conviction. *In the Interest of M.V.*, 742 P.2d at 329.

■ Because the preliminary hearing is a screening device, and not a mini-trial, much latitude is accorded the prosecution at this stage to establish probable cause that the defendant committed the crime as charged. *See People v. Jensen*, 765 P.2d 1028, 1030 (Colo.1988). The trial court is therefore obligated at the preliminary hearing to view the evidence presented in the light most favorable to the prosecution. *See, e.g., People v. District Court*, 779 P.2d at 388; *People v. Williams*, 628 P.2d 1011, 1014 (Colo.1981). "[I]t is not for the trial judge at a preliminary hearing to accept the defendant's version of the facts over the legitimate inferences which can be drawn from the People's evidence." *People v. Holder*, 658 P.2d 870, 872 (Colo. 1983). Weighing the merits of the case is for the trier of fact at trial. *Id.*

■ The crime of child abuse is committed if a person "causes an injury to a child's life or health *or permits a child to be unreasonably placed in a situation which poses a threat of injury to the child's life or health.*" § 18–6–401(1), 8B C.R.S. (1986) (emphasis added). A class 2 felony child abuse charge is appropriate "[w]hen a person acts knowingly or recklessly and the child abuse results in death to the child." § 18–6–401(7)(a)(I).

To meet the charge of child abuse resulting in death in violation of section 18–6–

401(1) and (7)(a)(I), it must first be determined if there is sufficient evidence in the preliminary hearing record, when viewed in the light most favorable to the prosecution, to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant acted knowingly or recklessly.[3]

In *People v. Noble,* 635 P.2d 203 (Colo. 1981), this court held that

the requirement of "knowingly" in the statutory definition of child abuse does not refer to the actor's awareness that his conduct is practically certain to cause the proscribed result. Instead, "knowingly" refers to the actor's general awareness of the abusive nature of his conduct in relation to the child or his awareness of the circumstances in which he commits an act against the well-being of the child.

*Id.* at 210. We reaffirmed this distinction in *People v. Thompson,* 756 P.2d 353 (Colo. 1988), when we stated that "child abuse is not a crime in which an actor knowingly effects a particular result, rather, it is an offense in which an actor knowingly creates a situation that seriously threatens the well-being of a child." *Id.* at 355. Because child abuse encompasses mistreatment by inaction as well as action, we have recognized that child abuse occurs when a person's inaction creates circumstances that threaten a child's well-being. *See id.*

In the present case, the trial court heard testimony and observed photographs at the preliminary hearing which established that Steven Jay had suffered severe burns over approximately forty percent of his body. For at least three days, the defendant repeatedly washed and treated Steven's burns, and was therefore acutely aware of the magnitude of the boy's injuries. In addition to the appearance of Steven's second- to fourth-degree burns, the odor and coloration associated with the bacteria infecting Steven's wounds would have alerted the defendant to the boy's serious condition. Despite the severity of Steven's injuries, however, the defendant failed to provide him with proper medical care.

Drawing all inferences in favor of the prosecution, we find that there was sufficient evidence at the preliminary hearing to support a reasonable belief that the defendant knowingly or recklessly placed Steven in a situation that seriously threatened his well-being. The evidence presented at the preliminary hearing established probable cause to believe that a crime was committed and the defendant committed the crime. The rule is made absolute, and the case is remanded to the trial court with directions to reinstate the class 2 felony child abuse charge against the defendant.

---

**3.** The criminal culpability standards are set forth in § 18–1–501, 8B C.R.S. (1986). "Knowingly" is defined in subsection (6), which states that

[a] person acts "knowingly" or "willfully" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" or "willfully," with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

"Recklessly" is defined in subsection (8), which states that

[a] person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists.