STATE of Maine

v.

EVENTS INTERNATIONAL,
INC., et al.

Supreme Judicial Court of Maine.

Argued Jan. 12, 1987.
Decided July 16, 1987.

Stephen L. Wessler (orally), Asst. Atty. Gen., Chief, Consumer and Antitrust Div., Augusta, for the State.

Leland N. Chisholm, Kelly, Remmel & Zimmerman, Portland, Errol Copilevitz (orally), Kansas City, Mo., for defendants.

Before McKUSICK, C.J., and ROBERTS,* WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

The plaintiff, State of Maine, appeals from a judgment entered by the Superior Court, Kennebec County, in favor of the defendants, Events International, Inc. (Events), a professional fundraising corporation, and its president, James Nordmark. The State's action against the defendants was brought pursuant to 9 M.R.S.A. § 5012 (1980), which requires solicitors of funds for charitable organizations to disclose, at the time of solicitation, the financial allocations of contributions. Finding that section 5012 was unconstitutionally overbroad under the First Amendment to the United States Constitution and void for vagueness under the Fourteenth Amendment, the Superior Court, after a jury-waived trial, entered judgment for the defendants. For the reasons set forth herein, we affirm the judgment.

I.

Events is a Florida-based, for-profit corporation that plans, promotes, and operates fundraising events for its clients. Between 1982 and 1984, Events entered into contracts with a variety of organizations in Maine to sponsor magic shows, circuses, and other events in order to raise money on their behalf.[1] It supervised individuals who promoted ticket sales for these fundraising events over the telephone. During these promotions, Events failed to disclose certain information concerning the allocation of contributions to potential ticket buyers.

In 1983, the State filed a complaint to enjoin Events from continuing to operate in Maine, alleging that its solicitations of charitable contributions through ticket sales violated the disclosure requirements of section 5012 of the Charitable Solicitations Act, 9 M.R.S.A. §§ 5001–5016 (1980 & Supp.1986).[2] After obtaining consecutive

---

* Roberts, J., sat at oral argument and participated in the initial conferences, but did not participate in the final decision.

1. The organizations that hired Events during this period were Lions Clubs, Kiwanis Clubs, and Jaycees from various Maine towns and cities, the Exchange Club of Auburn, the Lewiston-Auburn Optimist Club, Augusta Knights of Columbus, and Big Brothers/Big Sisters of Portland.

2. Section 5012 provides:

   **Charitable solicitation disclosure**

   It shall be a violation of this chapter for a professional fund-raising counsel, profession-al solicitor, commercial co-venturer or any other person to solicit contributions from a prospective donor in this State without fully disclosing to the prospective donor at the time of solicitation the estimated percentage of each dollar contributed which will be expended for program services, fund raising and management when less than 70% of the amount contributed will be expended for program services. In addition, any person required to register under section 5008, or any of his agents, who solicits contributions shall disclose to the prospective donor at the time of the solicitation the percentage of the gross

temporary restraining orders, the State filed an amended complaint in 1985 seeking to permanently enjoin Events from operating in Maine on the ground that its business activities constituted unfair trade practices.[3] The State also sought the imposition of a constructive trust on a portion of Events' net proceeds earned in Maine to be set aside for payment to the State or the organizations that had contracted with Events for fundraising. After a three day trial, the Superior Court entered judgment for the defendants. It held that the mandatory disclosure requirements of section 5012 were "unconstitutionally vague, overbroad and burdensome, thereby rendering § 5012 void." It is from that judgment that the State appeals.

## II.

The defendants maintain that section 5012 is unconstitutional on its face because it is overbroad under the First Amendment and "void for vagueness" under the Fourteenth Amendment.[4] By mounting a "facial" challenge to section 5012, the defendants "claim that the law is 'invalid *in toto*

—and therefore incapable of any valid application.' " *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982) (quoting *Steffel v. Thompson*, 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974)). In assessing such a challenge, we are directed by the Supreme Court to first consider the overbreadth issue before turning to the question of whether the law is "void for vagueness." *See id.* at 1191; *CISPES v. F.B.I.*, 770 F.2d 468, 472 (5th Cir.1985).

▆▆▆ The United States Supreme Court has recognized that the solicitation of funds by charitable organizations is protected speech under the First Amendment. *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). Corporations, like Events, that are hired to solicit funds for charities, have standing to challenge the constitutional validity of statutes that interfere with charitable solicitations. *Secretary of State v. Joseph H. Munson Company, Inc.*, 467 U.S. 947, 959, 104 S.Ct. 2839, 2848, 81 L.Ed.2d 786 (1984).[5]

contribution which will constitute his compensation and all fund-raising expenses connected with that particular contract.
The Act defines "solicit and solicitation" as "any oral or written request, however communicated directly or indirectly, for any contribution." 9 M.R.S.A. § 5003(11) (1980). Solicitation is "deemed to have taken place when the request is made, whether or not the person making the solicitation receives any contribution in response." *Id.* "Contribution" means "the promise or grant of any money or property of any kind or value, including the payment or promise to pay in consideration of a sale, performance or event of any kind which is advertised in conjunction with the name of any charitable organization." 9 M.R.S.A. § 5003(4) (1980). Events is a "commercial co-venturer" under the Act; that is, "any person who, for profit or other commercial consideration, shall conduct, promote, underwrite, arrange or sponsor a sale, performance or event of any kind which is advertised in conjunction with the name of any charitable organization." 9 M.R.S.A. § 5003(3) (1980). It is therefore required, under section 5008, to register annually with the Commissioner of Business Regulation and, if not previously bonded, to file a $10,000 bond. 9 M.R.S.A. § 5008 (Supp.1986). At all times pertinent to this litigation, Events was properly registered and bonded pursuant to section 5008.

3. Section 5014 of the Charitable Contributions Act provides:

   **Violation as unfair trade practice**
   Any violation of this chapter shall constitute a violation of Title 5, chapter 10, the Unfair Trade Practices Act.
   Any intentional violation of this chapter shall be a Class D crime.

4. The defendants did not claim violations of the free speech or due process provisions of the Maine Constitution at trial or in their briefs. As a result, this issue is not preserved for appeal. *See State v. Thornton*, 485 A.2d 952 (Me.1984); *State v. Philbrick*, 481 A.2d 488, 493 (Me.1984); *State v. Desjardins*, 401 A.2d 165, 169 (Me.1979).

5. The Supreme Court has stated that First Amendment protections extend to "commercial speech." *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 758-59, 96 S.Ct. 1817, 1823-24, 48 L.Ed.2d 346 (1976). The Court, however, has not addressed the extent to which professional solicitors enjoy First Amendment protections when soliciting funds for charitable organizations. *See Munson*, 104 S.Ct. at 2846 n. 6. It is also unclear whether solicitations for contributions by "traditional charitable organizations" are as fully protected as solicitations by organizations involved in "information dissemination, discussion, and advo-

■ A statute is overbroad "if in its reach it prohibits constitutionally protected conduct." *State v. State of Maine Troopers Association*, 491 A.2d 538, 543 (Me. 1985) (citing *Grayned v. Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972)). To invalidate a statute on grounds that it is overbroad, however, challenging parties must generally show that the statute sweeps within its ambit a *substantial* amount of protected speech. *State v. State of Maine Troopers Association*, 491 A.2d at 543 (citing *New York v. Ferber*, 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113 (1982)).[6] "Substantial overbreadth" need not be shown, however, in a situation where a statute is unconstitutional on its face because it "does not employ means narrowly tailored to serve a compelling governmental interest" and directly restricts protected First Amendment activity "in all of its applications." *Munson*, 104 S.Ct. at 2852 & n. 13. *See Schaumburg*, 444 U.S. at 637–39, 100 S.Ct. at 836–37. *See also Schultz v. Frisby*, 807 F.2d 1339, 1349 (7th Cir.1986) (applying "the *per se* type" of overbreadth analysis of *Munson*). We find section 5012 facially unconstitutional under this latter standard.

■ The State argues that section 5012 furthers two "compelling" governmental interests: the prevention of fraudulent solicitations and the provision of information to prospective donors so that they understand how effectively their donations will serve the charitable purposes of organizations soliciting funds. It contends that the mandatory disclosures of section 5012 place a check on continued solicitations by organizations or corporations that fraudulently pocket contributions for purposes other than charitable causes and, at the same time, allow the public to assess the "efficiency" of charitable organizations.

The financial allocations specified in section 5012, need only be disclosed, however, when less than 70 percent of the amount contributed by a prospective donor will be expended for program services of the recipient organization.

Implicit in the statute's 70 percent triggering device for these disclosures is an assumption, on the part of the Legislature, that when less than 70 percent of a charitable contribution is allocated to the "program services" of a recipient charitable organization, the organization's "efficiency" and its purported charitable purpose are both suspect, and it should therefore be required to disclose its financial inner-workings to prospective contributors. Based on the Supreme Court's pronouncements concerning similar legislative assumptions and the evidence in this record, we conclude that these premises upon which section 5012 is predicated are untenable and, as a result, the statute, in all of its applications, unnecessarily intrudes upon rights protected by the First Amendment. It is on this basis, discussed in more detail below, that the statute should be

---

cacy of public issues." *See Schaumburg*, 444 U.S. at 635–36, 100 S.Ct. at 835–36. Events can properly assert the First Amendment rights of the organizations in Maine with which it has contracted because the activity sought to be protected is at the heart of the business relationship between Events and its clients, and Events' "interests in challenging the statute are completely consistent with the First Amendment interests of the charities it represents." *Munson*, 104 S.Ct. at 2848 (plurality), 2856 (Stevens, J., concurring). In addition, although the organizations Events has dealt with in Maine are traditional charities or civic organizations rather than those involved in the dissemination or advocacy of ideas or public issues, *see supra* note 1, the statute clearly applies to the latter because "any person" that solicits funds for an "educational purpose," must comply with its provisions. *See* 9 M.R.S.A. §§ 5003(1), 5003(2),

5012 (1980 & Supp.1986). In *Munson*, the Court allowed a professional fundraiser to challenge, on First Amendment grounds, a statute regulating solicitations, in part, because it found that the statute applied to educational institutions and organizations involved in the dissemination of ideas or advocacy of public issues. 104 S.Ct. at 2850–51 & n. 11.

**6.** The reason for that requirement is that a statute should not be found unconstitutional on its face "where, despite some possibly impermissible application, the remainder of the statute covers a whole range of easily identifiable and constitutionally proscribable conduct." *Munson*, 104 S.Ct. at 2851 (citations and quotations omitted).

struck down as unconstitutional. *See Munson*, 104 S.Ct. at 2853; *Schaumburg*, 444 U.S. at 637, 100 S.Ct. at 836; *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 786, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978).

Evidence presented at trial reveals that many charities operate below the 70 percent threshold during the early years when they are engaged in building a substantial donor base. Their financial allocations to "program services" may be low simply because they are just getting operations under way and attempting to fulfill a need that is unmet by other organizations. Charities or non-profit groups may also expend more on fundraising or management costs relative to program services because they serve unpopular causes. In either case, it cannot be said that the organization is either fraudulent or less "efficient" in meeting charitable purposes than others with relatively low fundraising or management costs and consequently higher percentage allocations to program services.[7] *See Munson*, 104 S.Ct. at 2852–53 & n. 15 (charitable activities may require high costs but still serve charitable purposes or high costs may simply be result of charity's unpopularity); *Schaumburg*, 444 U.S. at 637 n. 10, 100 S.Ct. at 836 n. 10 ("The costs incurred by charitable organizations conducting fund-raising campaigns can vary dramatically depending upon a wide range of variables, many of which are beyond the control of the organization."). More importantly, however, the very organizations most deserving of First Amendment protections—those involved in the dissemination of information, discussion, and advocacy of public issues, *see supra.* note 5,—are likely to have relatively high solicitation or fundraising costs (and therefore lower percentages of donations allocated to program services), not because they are fraudulent or any less efficient in furthering their causes than other non-profit or charitable organizations, but because the very nature of their activities cause those costs to be high.

*Munson*, 104 S.Ct. at 2850–51; *Schaumburg*, 444 U.S. at 635, 100 S.Ct. at 835.

Given these fundamental flaws in the design and operation of section 5012, it is only fortuitous that, in some of its applications, this statute might accomplish the State's goals of preventing fraud and providing information to prospective donors about the effectiveness of their contributions in furthering charitable purposes. *See Munson*, 104 S.Ct. at 2852–53 (state's ability to prevent fraud through percentage limitation on amounts charity can spend on expenses in fundraising activity fortuitous at best); *see also Black United Fund of N.J. v. Kean*, 593 F.Supp. 1567, 1578 (D.N.J.1984). This lack of logical congruency between the statute's design and the State's interest that it seeks to further makes inescapable the conclusion that the statute, in all of its applications, is an unacceptable and unnecessary intrusion upon First Amendment rights. *See Munson*, 104 S.Ct. at 2852–53. As a result, it is unconstitutional on its face. *See id.; Schaumburg*, 444 U.S. at 637–39, 100 S.Ct. at 836–37.

The entry is:

Judgment affirmed.

All concurring.

---

**7.** The same may be said for organizations that sponsor very costly fundraising events where the percentage of gross contributions that they

obtain for their "program services" appears small, but in absolute terms the amount is quite substantial.