The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Joseph Lawrence FRENCH and Thomas A. Atkins, Defendants–Appellees.

The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Michael CALLAN and Robert Callan, Defendants–Appellees.

Nos. 87SA143, 87SA144.

Supreme Court of Colorado, En Banc.

Oct. 11, 1988.

Donald E. Mielke, Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Golden, for plaintiff-appellant.

Springer and Steinberg, Jeffrey A. Springer, Harvey A. Steinberg, Keller, Dunievitz, Johnson & Wahlberg, Alex Stephen Keller, Denver, for defendants-appellees.

VOLLACK, Justice.

The People appeal two orders of dismissal of the Jefferson County District Court, holding that section 18–5–115(1)(a), 8B C.R. S. (1986), of the charitable fraud statute, is unconstitutionally overbroad. We affirm.

## I.

On December 19, 1986, indictments were returned in the Jefferson County District Court against Joseph L. French and Thomas A. Atkins, corporate officers of Bristlecone Telemarketing, Inc., charging them with charitable fraud and conspiracy to commit charitable fraud in violation of section 18–5–115, 8B C.R.S. (1986). They moved to dismiss the charges on the ground that section 18–5–115(1)(a) was unconstitutionally overbroad. The district court, relying on *Schaumburg v. Citizens For a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), *Secretary of State v. Joseph H. Munson Co.,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), and *May v. People,* 636 P.2d 672 (Colo.1981), concluded that speech pertaining to charitable solicitation is entitled to the highest degree of first amendment protection, and that the statute was not narrowly tailored to achieve the compelling state interest of preventing fraud. As a result, the district court held that section 18–5–115(1)(a) was unconstitutionally overbroad, and dismissed the charges. The People appealed the order of dismissal directly to this court pursuant to section 16–12–102, 8A C.R.S. (1986).

In a separate proceeding, Michael Callan and Robert Callan, corporate officers of Callan Publishing, Inc., were indicted by the Jefferson County grand jury for charitable fraud and conspiracy to commit charitable fraud in violation of section 18–5–115(1)(a). They also moved to dismiss the charges based on a claim that the statute was unconstitutional. The district court dismissed the charges. The People appealed directly to this court, and moved to consolidate the two cases. This court granted the motion, and we now consider these cases together.

## II.

Section 18–5–115 defines the crime of charitable fraud. In 1978, section 18–5–115(1)(a) provided:

(1) A person commits charitable fraud if such person commits any of the following acts:

(a) Solicits or receives contributions for a purpose or use which, by affirmative representations or through lack of adequate disclosure, leads the person or persons, to whom the solicitation is made or from whom the contribution is received, reasonably to believe that such contributions will be used for the *primary benefit* of a charitable organization while not intending that such contributions will be so used. Evidence that contributions are used other than primarily for the benefit of a charitable organization shall be admissible to prove that such contributions were solicited or received with the intent that the use would be other than *primarily for the benefit* of a charitable organization.

8 C.R.S. (1978) (emphasis added). In *People v. Moyer*, 670 P.2d 785, 789 (Colo.1983), we held that the phrases "primary benefit" and "primarily for the benefit" in section 18–5–115(1)(a) rendered the statute unconstitutionally vague because persons of common intelligence must guess at its meaning. We stated that it was "unclear whether the General Assembly intended 'primary benefit' to mean fifty percent of the proceeds, more than fifty percent of the proceeds, or a share larger than that received by any other party regardless of whether it amounted to fifty percent or more of the proceeds." *Id.* Also unclear was "whether the amount which constitutes the 'primary benefit' (whatever that may be) is to be calculated on the basis of the gross proceeds or net proceeds of the charitable solicitation." *Id.* Because we concluded those phrases rendered the statute void for vagueness, we did not address whether the statute was also unconstitutionally overbroad. *Id.* at 790.

In response to *Moyer*, the General Assembly amended section 18–5–115 by defining the terms "primary benefit," "adjusted gross proceeds," and "administrative costs." Ch. 134, § 1, § 18–5–115, 1984 Colo.Sess. Laws 546, 546–47. Section 18–5–115 in all other respects remained unchanged. As amended, section 18–5–115(1)(a) provided in pertinent part:

For the purposes of this subsection (1):

(I) "Primary benefit" means more than fifty percent of the adjusted gross proceeds.

(II) "Adjusted gross proceeds" means the gross proceeds less the actual fair market value of the direct cost incurred to provide goods, services, entertainment, including rents paid for facilities used to provide such entertainment, products, or commodities which are received by the donor in exchange for his payment. In arriving at adjusted gross proceeds, administrative costs shall not be subtracted from gross proceeds.

(III) "Administrative costs" means:

(A) Salaries or commissions and other compensation paid directly or indirectly to solicitors; and

(B) Administrative expenses, including, but not limited to, salaries, attorney fees, rents, excluding rents for facilities used for entertainment as provided for in subparagraph (II) of this paragraph (a), telephone charges, advertising expenses, or other related expenses incurred as administrative or overhead items.

8B C.R.S. (1986). As a result, a person who solicited contributions for a purpose which led the person solicited reasonably to believe that more than 50% of the adjusted gross proceeds would go to the charitable organization while not intending that such contributions would be so used, committed charitable fraud under section 18–5–115(1)(a). In addition, the statute by implication compelled a fundraiser who charged a fee in excess of 50% of the adjusted gross proceeds to disclose to the person solicited that the charity received less than half of the adjusted gross proceeds. The district court found this version of the statute unconstitutionally overbroad.[1]

---

**1.** Section 18–5–115 was further amended in 1987, *see* ch. 115, § 24, § 18–5–115, 1987 Colo.

## III.

■ Before deciding whether a statute is unconstitutionally overbroad, we must first determine whether the parties challenging the statute have standing to challenge its validity. *People ex rel. Tooley v. Seven Thirty–Five East Colfax*, 697 P.2d 348, 355 (Colo.1985). If these parties do have standing, they bear the burden of proving that the statute, which is entitled to a presumption of constitutionality, *see People v. Moore*, 674 P.2d 354, 357 (Colo.1984), is unconstitutional beyond a reasonable doubt, *see People v. McBurney*, 750 P.2d 916, 917 (Colo.1988).

### A.

■ Standing requires a party to show injury in fact to a legally protected interest. *Marco Lounge, Inc. v. City of Federal Heights*, 625 P.2d 982, 984 (Colo.1981). The general rule is that a party may not base standing on an actual injury to the legally protected interest of third parties. *Warth v. Seldin*, 422 U.S. 490, 499–501, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975); *Parrack v. Town of Estes Park*, 628 P.2d 1014, 1016 (Colo.1981). In the context of first amendment overbreadth challenges, however, the rules of standing are relaxed so as to permit litigants to challenge a statute "not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed. 2d 786 (1984) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973) (footnote omitted)); *State Bd. for Community Colleges v. Olson*, 687 P.2d 429, 435 (Colo.1984). *See generally* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 87–91 (2d ed. 1984). In this case, the appellees argue that the statute is overbroad because it infringes on charitable organizations' freedom of speech. This averment is sufficient to demonstrate injury to a legally protected interest of charitable organizations. We therefore conclude that the appellees have third party standing to challenge the constitutionality of section 18–5–115.

### B.

Resolution of this dispute turns on three United States Supreme Court cases: *Schaumburg v. Citizens For a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 86 (1984), and *Riley v. National Federation of the Blind*, —— U.S. ——, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988).

In *Schaumburg*, the Court struck down an Illinois municipal ordinance prohibiting charities using less than 75% of their receipts for charitable purposes from soliciting contributions door-to-door or on public streets. The Court held that the ordinance infringed on the charitable organization's first and fourteenth amendment rights by being unconstitutionally overbroad. The Court rejected the claim that charitable solicitation entails simply commercial speech, noting that, in the context of seeking support for particular causes or for particular views on economic, political, or social issues, fundraisers "are necessarily more than solicitors for money." 444 U.S. at 632, 100 S.Ct. at 834. Because charitable solicitation "is characteristically intertwined with informative and perhaps persuasive speech," the Court measured the ordinance under the strict scrutiny standard. *Id.* It held that the ordinance was deficient in two respects. First, it was not substantially related to the asserted state interest of protecting the public from fraud and undue annoyance. *Id.* at 638, 100 S.Ct. at 836–37. Second, the state interest in preventing fraud could have been better served by less intrusive means, such as

Sess. Laws 603, 611, and repealed in its entirety in 1988, *see* ch. 43, § 3, § 18–5–115, 1988 Colo. Sess. Laws 350, 359. In its place, the General Assembly enacted the Colorado Charitable Solic-

itations Act. *See* ch. 43, § 1, §§ 6–16–101 to –113, 1988 Colo.Sess. Laws 350, 350–58. The constitutionality of these provisions, however, are not before us.

penal laws punishing fraudulent misrepresentation directly or financial disclosure requirements on the charitable organization. *Id.* at 637 & n. 11, 638 & n. 12, 100 S.Ct. at 836 & n. 11, 837 & n. 12.

In *Munson,* the Court considered a Maryland statute that had the effect of prohibiting a fundraiser from charging a charitable organization a fee greater than 25% of the gross income of the charitable organization.[2] The statute permitted the Secretary of State to waive the 25% requirement, however, when it would effectively prevent the charitable organization from raising contributions. Md.Code Ann. Art. 41, § 3–204 (1982). The fundraiser challenged the statute on overbreadth grounds, while the state contested both the fundraiser's standing to challenge the statute and the claim that the statute was unconstitutional.

The Court found that the fundraiser had third party standing to challenge the statute as an infringement of the first amendment rights of the charitable organization it represented. 467 U.S. at 958, 104 S.Ct. at 2847. It rejected the state's claim that the admittedly commercial relationship between the charitable organization and the fundraiser permitted the statute to be measured as a reasonable regulation of commercial speech. *Id.* at 967 & n. 16, 104 S.Ct. at 2852–53 & n. 16. Evaluating the statute under the strict scrutiny standard, the Court found that the statute was not narrowly tailored to achieve the legitimate state interest of preventing fraud. It concluded that the statute was facially overbroad because "in all its applications it operates on a fundamentally mistaken premise that high solicitation costs are an accurate measure of fraud." *Id.* at 966, 104 S.Ct. at 2852. Despite the possibility that the statute permitted the Secretary of State to waive the 25% limitation in certain circumstances, the Court invalidated the statute as an infringement of the charitable organization's first amendment right to free speech.

In *Riley,* the Court found that two provisions of the North Carolina charitable fraud statute were unconstitutionally overbroad. The statute prohibited professional fundraisers from charging an unreasonable fee for soliciting funds for charitable purposes. The statute defined the reasonableness of the fee charged by professional fundraisers in terms of a percentage of gross receipts. *See* N.C.Gen.Stat. § 131C–17.2 (1986). A fee of up to 20% of the gross receipts was deemed to be reasonable. A fee greater than 20% but less than 35% of the gross receipts would be deemed to be unreasonable upon a showing that the solicitation did not involve the dissemination of information relating to public issues as directed by the charity. A fee greater than 35% of gross receipts was presumed to be unreasonable, but the fundraiser could rebut that presumption by evidence that the fee was necessary because of the dissemination of information relating to public issues as directed by the charity or because the charity's ability to raise money or communicate its ideas would otherwise be significantly diminished. The statute also required professional fundraisers to disclose to the person solicited "the average of the percentage of gross receipts actually paid to the persons established for a charitable purpose" by the fundraiser for the previous twelve months, but did not impose a similar requirement on volunteer fundraisers. N.C.Gen.Stat. § 131C–16.1(3) (1986).

The Court held that the reasonable fee provision of the statute chilled free speech.[3] The Court evaluated the statute under the strict scrutiny standard, stating that "using percentages to decide the legality of a fundraiser's fee is not narrowly tailored to the State's interest in preventing fraud." 108 S.Ct. at 2673 & n. 5. The Court recognized that preventing fraud is a

---

**2.** The statute excluded from its definition of gross income contributions equal to the charitable organization's actual cost for goods, food, drink, entertainment, postage and printing. *See* Md.Code Ann. Art. 41, § 3–204 (1982).

**3.** Based on its interpretation of footnotes 6 and 16 of *Munson,* the Court stated that free speech rights were affected, but did not decide whether those rights belonged to the charity or the fundraiser. *See Riley,* 108 S.Ct. at 2676.

compelling state interest, but concluded that permitting the fundraiser to rebut the presumption of unreasonableness surrounding fees greater than 35% of the gross receipts did not narrowly tailor the statute within constitutional bounds.

The Court also invalidated the requirement that the fundraiser disclose to the person solicited the percentage of charitable contributions retained by the charity during the previous twelve months. It stated that, however commercial the fundraiser's speech may be in the abstract, such speech does not retain its commercial character "when it is inextricably intertwined with otherwise fully protected speech." *Id.* at 2677. The Court therefore applied the strict scrutiny test to the disclosure requirement. It rejected the claim that the state interest of informing citizens how the money they contribute is spent, so as to dispel the possible misperception that the contribution "goes in greater-than-actual proportion to benefit charity," rises to the level of a compelling state interest. *Id.* at 2678. It also concluded that the means chosen to implement the state interest are "unduly burdensome and not narrowly tailored." *Id.* The Court stated that the type of compelled disclosure required by the statute "will almost certainly hamper the legitimate efforts of professional fundraisers to raise money for the charities they represent" because the person solicited would be likely to hang up the phone or close the door upon hearing that a high percentage of the contribution was retained by the fundraiser. *Id.* at 2679. Because small or unpopular charitable organizations are less likely to have volunteers and more likely to require the services of professional fundraisers that will charge high fees due to the difficulty in soliciting on behalf of unknown or unpopular causes, the Court stated that the disclosure requirement would have a disproportionate impact on these organizations.

The Court also held that more narrowly tailored options were available. These options included a requirement that the professional fundraiser disclose financial information to the state, which the state in turn could communicate to the public without burdening the speaker. "Alternatively, the State may vigorously enforce its antifraud laws to prohibit professional fundraisers from obtaining money on false pretenses or by making false statements." *Id.* Finally, the Court held that a statute requiring a professional fundraiser to disclose his or her professional status to the person solicited would not be unconstitutional. *Id.* at 2679 & n. 11.[4] For these reasons, the Court found the two provisions to be overbroad.

## IV.

The People argue that section 18–5–115(1)(a) is not facially overbroad because, unlike the statutes in *Schaumburg* and *Munson,* this statute permits a fundraiser to charge any fee the fundraiser desires. They argue that a compelled disclosure requirement relating solely to the percentage of contributions actually received by the charity does not chill protected speech because it furthers the state interests of "ensur[ing] that the person being solicited has information on which to base his decision," and of preventing fraud. The appellees argue that section 18–5–115(1)(a) is facially overbroad because it is not narrowly tailored to achieve a compelling state interest. Based on *Schaumburg, Munson,* and *Riley,* we conclude that section 18–5–115(1)(a) is overbroad on its face.[5]

As noted above, speech pertaining to charitable solicitation is entitled to the highest constitutional protection, and may

---

**4.** Seven Justices agreed that both the reasonable fee provision and the disclosure requirement of the statute were unconstitutional. Of those seven, all but Justice Scalia agreed that disclosure of the fundraiser's professional status to the person solicited could be compelled. Justice Scalia believed that such a disclosure requirement was unconstitutional because it was not narrowly tailored to prevent fraud. 108 S.Ct. at 2681 (Scalia, J., concurring in part and dissenting in part).

**5.** Neither the parties to this case nor the district court had the benefit of the *Riley* decision because it was decided after this case was briefed and argued to this court.

be regulated only when narrowly tailored to achieve a compelling state interest. *See Riley,* 108 S.Ct. at 2679; *Munson,* 467 U.S. at 967–68, 104 S.Ct. at 2852–53; *Schaumburg,* 444 U.S. at 636, 100 S.Ct. at 836; *May v. People,* 636 P.2d 672, 676 (Colo. 1981). The state interest of informing citizens of the percentage of contributions actually retained by the charitable organization does not rise to the level of a compelling state interest. *Riley,* 108 S.Ct. at 2678. Such a requirement has no independent significance. Its significance is derived from the inference that charities who pay more than a given percentage of their contributions to professional fundraisers are somehow more likely to engage in fraud. This "mistaken premise that high solicitation costs are an accurate measure of fraud" cannot justify the imposition of such a burden on free speech. *See Munson,* 467 U.S. at 966, 104 S.Ct. at 2852; *see also State v. Events Int'l, Inc.,* 528 A.2d 458, 461 (Me.1987) (rejecting claim that informing donors of accurate percentage of contributions going to charity is a compelling state interest). The alternate state interest of preventing fraud, however, is a compelling state interest. *Riley,* 108 S.Ct. at 2675; *Munson,* 467 U.S. at 961, 104 S.Ct. at 2849; *Schaumburg,* 444 U.S. at 639, 100 S.Ct. at 837. As these cases indicate, however, more narrowly tailored means of preventing fraud are available than compelling the fundraiser to disclose to the person solicited the percentage of funds that the charity receives. In addition, a statute compelling a fundraiser to disclose the percentage of funds the charity receives to the person solicited cannot survive constitutional scrutiny when less restrictive alternatives are available. *See Riley,* 108 S.Ct. at 2679 (state either can compel fundraiser to file financial information with the state for public dissemination or can vigorously enforce antifraud laws).

Section 18–5–115(1)(a) requires the fundraiser to disclose to the person solicited the amount of the adjusted gross proceeds received by the charitable organization whenever the charitable organization contracts to pay 50% or more of the adjusted gross proceeds to the fundraiser. Such com-

pelled disclosure infringes on the charity's freedom of speech under the first and fourteenth amendments, and is therefore unconstitutionally overbroad.

The district court's orders of dismissal are affirmed.