962 F.2d 1501
 AMERICAN COUNCIL OF THE BLIND OF COLORADO, INC., a Colorado
non-profit corporation; Rocky Mountain Federation of
Handicapped Athletes, a Division of Pegasus Foundation,
Inc., a Colorado non-profit corporation, Plaintiffs-Appellants,
v.
Roy ROMER, Governor, State of Colorado; Duane Woodard,
Attorney General, State of Colorado; Norman S. Early, Jr.,
District Attorney for the Second Judicial District, State of
Colorado, Defendants-Appellees.
 No. 90-1365.
 United States Court of Appeals,
Tenth Circuit.
 May 5, 1992.
 
 1
 Robert C. Moest of Fleishman, Fisher & Moest, Los Angeles, Cal. (Barry A. Fisher, Los Angeles, Cal., and Edwin S. Kahn, Denver, Colo., with him on the brief), for plaintiffs-appellants.
 
 
 2
 Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Denver District Attorney's Office (Larry Tannenbaum, Asst. Atty. Gen., Colorado Atty. General's Office, with him on the brief), Denver, Colo., for defendants-appellees.
 
 
 3
 Before LOGAN and BRORBY, Circuit Judges, and DAUGHERTY, District Judge.*
 
 
 4
 DAUGHERTY, District Judge.
 
 
 5
 The Plaintiffs-Appellants appeal from a denial of their Motion for Attorneys Fees pursuant to 42 U.S.C. § 1988. The Appellants had filed suit under 42 U.S.C. § 1983 in June, 1988, challenging the constitutionality of the Colorado Charitable Solicitations Act, which was to become effective on July 1, 1988. In that suit, the Plaintiffs alleged that the Act unconstitutionally discriminated against new, small and unpopular groups that depended on outside fundraisers for their support because of the unique and extraordinary burdens the Act placed on organizations that engaged those outside fundraisers. The Plaintiffs also asserted that certain specific sections of the statute imposed impermissible burdens on speech that were not closely tied to any significant or compelling state interest.
 
 
 6
 At a hearing on August 26, 1988, the Plaintiffs' lawsuit was consolidated with two other lawsuits also challenging the Charitable Solicitations Act, and all of the Defendants except the Governor of Colorado, the Attorney General of Colorado and the Denver District Attorney were dismissed. The Plaintiffs had previously filed Motions for a preliminary injunction, and those Motions were withdrawn on the above date because the Defendants agreed not to enforce most of the provisions of the new Act until the challenges to the Act could be resolved. On November 21, 1988, the parties entered into a stipulation to vacate all dates that had been set by the trial court in an attempt to resolve the litigation by legislative amendment. On June 6, 1989, the legislative amendments were signed into law.
 
 
 7
 The Plaintiffs then moved for attorneys fees in the amount of $80,000.00 under the Civil Rights Attorneys Fees Award Act of 1976, 42 U.S.C. § 1988.[1] The Motion for Attorneys Fees was referred by the Court to a magistrate for hearing and recommendation. After a hearing the magistrate concluded and recommended that the Plaintiffs were not prevailing parties under the relevant case law and therefore were not entitled to any award of attorneys fees. In addition, the magistrate concluded and recommended that the attorneys fees should not be awarded because "counsel represented a non-party [sic], Vantage and North American." Recommendation of United States Magistrate, at 11. The magistrate also stated that he was of the opinion that Plaintiffs' counsel possibly violated several rules of professional conduct. The magistrate's findings and recommendations were accepted and adopted by the district court in November, 1990, except as to the finding of any professional conduct violation on the part of Plaintiffs' counsel.
 
 
 8
 The only issue on appeal in this case is whether the district court erred in denying Plaintiffs' Motion for an award of attorneys fees under 42 U.S.C. § 1988. The Appellants frame the sub-issues as follows: (1) whether Plaintiffs were the prevailing parties in the litigation, and (2) whether a denial of fees was justified because the Plaintiffs' fees were paid by a third party.
 
 
 9
 The standard of review to be applied in this case is that questions of law are reviewed de novo, while questions of fact may be disturbed on appeal only if found to be clearly erroneous. Post Office v. Portec, Inc., 913 F.2d 802 (10th Cir.1990). In applying the above principles to an attorneys fee case under 42 U.S.C. § 1988, this Court has stated that if the issue of prevailing party turns on whether the Plaintiff's lawsuit is causally linked to the relief obtained, that is, whether the suit is a substantial factor or significant catalyst in prompting the change, that is a factual issue to which the clearly erroneous standard of review should be applied. The second prong of the analysis, whether the change that resulted was actually required by law, is a legal issue which this Court should examine de novo. Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986).
 
 
 10
 This Court will first discuss the Appellants' contention that the district judge was incorrect in holding that the Appellants were not entitled to fees because those fees were paid by a third party. The magistrate's recommendation used the fact that the Plaintiffs' fees were paid by a third party as a separate and independent basis upon which to deny Plaintiffs their fees under 42 U.S.C. § 1988, regardless of whether Plaintiffs would have been otherwise so entitled under the test for prevailing party.
 
 
 11
 The magistrate's recommendation states that, "[i]t is clear by the records of counsel for the Plaintiffs that they represented Vantage and acted solely at the direction of Vantage." The district court determined that this fact alone was a sufficient basis upon which to deny the Appellants attorneys fees regardless of the results achieved by the Plaintiffs' lawsuit. The Appellants assert that the district court's conclusion that fees should not be awarded to Plaintiffs when those fees are paid by a third party is erroneous. It is the position of the Appellants that the actual financing of the fee arrangement is irrelevant to an award of fees under § 1988 if the Plaintiffs are otherwise entitled to a fee.
 
 
 12
 This Court is in agreement with the Appellants on this issue. As the United States Supreme Court has stated when discussing 42 U.S.C. § 1988, "[t]he prevailing party should ordinarily recover an attorneys fee unless special circumstances would render such award unjust." Newman v. Piggie Park Enterprises, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Numerous other cases have allowed the prevailing party to recover an attorneys fee without regard to other factors such as the party's ability to pay his own lawyer, Jones v. Wilkinson, 800 F.2d 989 (10th Cir.1986), Cooper v. Singer, 719 F.2d 1496 (10th Cir.1983), overruled on other grounds, Venegas v. Mitchell, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990), or whether the prevailing party was a lawyer representing himself pro se and thus not liable for fees. Duncan v. Poythress, 777 F.2d 1508 (11th Cir.1985). An attorneys fee award has also been awarded when counsel was receiving partial compensation from a third party, Johnson v. University College of the University of Alabama in Birmingham, 706 F.2d 1205 (11th Cir.1983), Ward v. Kelly, 515 F.2d 908 (5th Cir.1975). There is no logical distinction between the financing arrangements in the above-cited cases and the arrangements between the parties in the case at bar that would require a different result.
 
 
 13
 Accordingly, this Court is unwilling to find the type of financing arrangement herein to be a ground for attorney fee denial or a "special circumstance" that would render an award of attorneys fees unjust if such award was otherwise appropriate. If the Plaintiffs are determined to be prevailing parties under the relevant case law, this Court is of the opinion that the type of financing arrangement involved in the case should not be used as an independent basis on which to deny the Plaintiffs their deserved fees. Although we are of the opinion that the district court committed error in its determination that the Plaintiffs were not entitled to fees because the litigation was financed by a third party, we will nonetheless affirm the district court's denial of fees in this case on the separate issue of prevailing party.
 
 
 14
 The Appellants' other contention on appeal is that the district court erred in its holding that the Appellants were not prevailing parties for attorneys fee purposes, thus denying the Appellants an award of fees on this basis as well. In this connection, the magistrate's conclusion and recommendation, which by adoption became the order of the district court, was that the Plaintiffs did not obtain the relief sought in their lawsuit by means of the statutory changes made in the Colorado Charitable Solicitations Act. The United States Supreme Court case of Texas State Teachers v. Garland Independent School District, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), was cited in the magistrate's recommendation for the proposition that:
 
 
 15
 "Where a plaintiff's success on a legal claim can be characterized as purely technical or di minimus, a district court would be justified in concluding that even the 'generous formulation' we adopt today has not been satisfied ... The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress has sought to promote in the fee statute." Recommendation of United States Magistrate, at 2, citing Garland, 489 U.S., at 792, 109 S.Ct., at 1493.
 
 
 16
 Relying upon the above-quoted language, the district court held that the Plaintiffs attacked the Colorado Charitable Solicitations Act on equal protection and First Amendment grounds and sought by their lawsuit to cause the repeal of the Act. The district court specifically held that the Act was not repealed and that any changes that were effected to certain provisions of the statute contested by the Plaintiffs on First Amendment grounds as a result of the amendments were purely technical or di minimus. The district court in addition held that the basic purpose of the Act was in fact strengthened rather than weakened by the amendments, and no change in the legal relationship between the professional fundraiser and the State of Colorado was effectuated as a result of the amendments to the Act in that Colorado did continue to regulate the activities of paid solicitors of funds. Thus, the Plaintiffs' equal protection goals were not achieved, and any benefits to the Plaintiffs as a result of changes that were made in certain provisions of the statute were di minimus when the overall regulatory function of the Act is considered. In conclusion on this point, the district court stated that "the plaintiffs did not obtain the relief they sought and were not prevailing parties...." Recommendation of the United States Magistrate, at 5.
 
 
 17
 The district court addressed the two-pronged test enunciated by the First Circuit in Nadeau v. Helgemoe, 581 F.2d 275 (1st Cir.1978), approved by the Supreme Court in Garland and adopted by this Circuit in Foremaster v. City of St. George, 882 F.2d 1485 (10th Cir.1989). The Nadeau test states that when there has been no judicial determination of the lawsuit on the merits, a plaintiff may nonetheless prevail for attorneys fee purposes if he can meet the catalyst test and show "(1) that [the lawsuit] is causally linked to securing the relief obtained, and (2) that the defendant's conduct in response to the lawsuit was required by law." Foremaster, 882 F.2d 1485, 1488, citing J & J Anderson, Inc. v. Town of Erie, 767 F.2d 1469, 1473 (10th Cir.1985).
 
 
 18
 The district court held that the first prong of the Nadeau test was not met in the case at bar, and stated in part as follows:
 
 
 19
 "The first important factor is that the defendants were not going to enforce or implement the Colorado Charitable Solicitations Act of 1988 until the results of two lawsuits which were pending before separate Supreme Courts were decided. There was pending before the United States Supreme Court the case of Riley v. National Federation of the Blind of North Carolina, 487 U.S. 781, 108 S.Ct. 2667 [101 L.Ed.2d 669] (1988), and People v. French, 762 P.2d 1369 (Colo.1988). Immediately upon being informed of the lawsuit, both the Attorney General's office and the District Attorney's office informed Plaintiffs' counsel that they had not intended to nor did they intend to enforce the Act. The Riley case was decided on June 30, 1988, and the French case on October 11, 1988.
 
 
 20
 A review of the transcript of the hearings before the Senate and House Committees established that the amendments to the 1989 [sic] Act related to the Riley and French decisions. A review of the transcript established that there was no discussion of the present lawsuit before the Committees, nor is there any indication that the lawsuit was taken into consideration in modifying any of the provisions of the statute. There is no discussion in either Committee concerning an equal protection problem.
 
 
 21
 Neither counsel for the Plaintiffs or the Plaintiffs themselves appeared at any legislative hearing, nor is there any indication that correspondence was sent to the legislature by Plaintiffs' counsel or the Plaintiffs themselves ... The attorneys' records show that the Plaintiffs' counsel simply sat in a passive mode receiving phone calls and correspondence from the defense counsel and reviewing documents that were sent to them ... The attorneys' own records establish that the Plaintiffs' counsel were not a moving force behind the legislative changes, but remained in California in a passive role, receiving information and passing it on to their corporate client, Vantage.
 
 
 22
 I find that the Plaintiffs' attorneys' efforts were not the moving force behind the changes of the legislation. The moving force behind the legislation were the Riley and French cases. If there was any positive result of the statutory changes for the Plaintiffs, it is because they were recipients of the hard-fought efforts of other persons and other attorneys."
 
 
 23
 Recommendation of the United States Magistrate, at 6.
 
 
 24
 Because the district court held that the Plaintiffs were not prevailing parties under the first prong of the Nadeau test, the Court found that there was no need to address the second "required by law" element of Nadeau.
 
 
 25
 The Appellants assert that the district court, although correctly citing the Garland case, erroneously applied the standard set forth therein to the facts of this case. The Appellants state that the district court erroneously concluded that, in order to meet the standards of Garland, the Plaintiffs had to succeed on the central issue in the litigation in order to be eligible for attorneys fees. The Appellants assert that Garland states, to the contrary, that it is necessary only that the plaintiffs "be able to point to a resolution of the dispute which changes the legal relationship between [the plaintiffs] and the defendant." Appellants' Brief, at 17, citing Garland, 489 U.S., at 792, 109 S.Ct., at 1493. It is the position of the Appellants that this is easily achieved when the propositions urged in their lawsuit are compared with the results achieved by the statutory amendments.
 
 
 26
 The Appellants also contend that the district court erroneously based its conclusion that the Plaintiffs were not prevailing parties under Nadeau on a finding that "the plaintiffs' attorneys' efforts were not the moving force behind the changes of the legislation," Recommendation of United States Magistrate at 7. The Appellants assert that the district court applied too rigorous a standard to the Appellants' lawsuit and properly should have considered only whether or not the Plaintiffs' actions were a significant factor in causing the Defendants to act, rather than the moving force. Leuthje v. Peavine School Dist., 872 F.2d 352 (10th Cir.1989). The Appellants state that the sequence of events itself indicates that the lawsuit was a factor in the statutory amendment, and that internal documents from the District Attorney's office indicate that the amended statute was strongly influenced by the pending legislation.
 
 
 27
 Lastly, the Appellants assert that both the Riley and the French cases relied upon by the district court as the cause of the legislative change is based upon a flawed reading of those cases. The Appellants contend that the decision in Riley did not mandate the changes in the Colorado Charitable Solicitations Act because the North Carolina statute at issue in Riley varied significantly from the Colorado statute.
 
 
 28
 As previously stated, this Court has held that the district court's findings as to whether or not the Plaintiffs' lawsuit is a substantial factor or significant catalyst in prompting the legislative change is a factual issue which should be reviewed on appeal using the clearly erroneous standard of review. The Appellants in this case urge that the district court's conclusions on this issue rest on incorrect premises of law and should thus be reviewed de novo. In light of the holding of Supre v. Ricketts, this Court disagrees with the Appellants' argument and will review the district court's findings as to the "significant catalyst" issue using the less rigorous clearly erroneous standard.
 
 
 29
 This Court has reviewed the Colorado Charitable Solicitations Act as it existed prior to the amendments and as changed by the 1989 amendments. This Court is in agreement with the district court that the large majority of the changes should be deemed technical or di minimus and that the changes in the Act did not significantly alter the state regulation of and requirements placed on a paid solicitor in Colorado. There was no material alteration of the legal relationship between paid solicitors and the State of Colorado. The changes in the Colorado 1988 statute as a result of the 1989 amendments are as follows:
 
 
 30
 There were no changes of any consequence in Sections 6-16-101 through 6-16-103 and 6-16-110 through 6-16-113 in the Colorado Charitable Solicitations Act.
 
 
 31
 Section 6-16-104 included a provision prior to the amendments that a paid solicitor file a financial report with the Secretary of State for any solicitation campaign within 60 days after the solicitation campaign had ended. The amended statute extended the time period to 90 days. The Appellants assert that this was a substantial change from the original statute, but this Court is of the opinion that such a change is insignificant. This section also provided prior to the amendments that the records and accounting for a solicitation campaign directed toward Colorado residents shall be kept in Colorado at the principal place of business of the paid solicitor. It also provided that the provisions of the section should apply only to a paid solicitor who solicits door-to-door or by telephone. Both of those sections were repealed in the amended Act. The Appellants assert that such repeal was not only of significant benefit to the Appellants, but caused by the Appellants' lawsuit. This Court disagrees with the Appellants on both of these contentions and finds that while the repeal of the requirement that business records be kept at a solicitor's principal place of business in Colorado may have been of some benefit to the Appellants, such benefit was merely technical and could hardly be deemed significant in light of the asserted primary purpose of the Appellants' lawsuit, which was to cause repeal of the statute on equal protection grounds.
 
 
 32
 Section 6-16-106 originally prohibited a monetary contribution solicited by telephone to be collected in person. The Appellants allege that their Complaint asserted that that provision would substantially reduce the number of pledges and increase the cost of collecting donations. The provision in the section was repealed and the Appellants again assert that such repeal results in benefit to the Appellants and was caused by their Complaint. As stated in regard to the section discussed above, this Court is simply not persuaded that such a change is significant in light of Appellants' equal protection argument, and is nothing more than di minimus. The principal thrust of that section dealt with the right of a contributor to rescind his pledge (the title of the section). This right was not changed except in only minor procedural respects and not in substance. The contributor retained the right to cancel his pledge.
 
 
 33
 Section 6-16-107 concerned the use of donated tickets in solicitation. The amendment to that section, while simplifying the procedure in regard to donated tickets, does not change the ultimate thrust of the statute in this respect and could not be considered significant.
 
 
 34
 Section 6-16-108 was obviously repealed due to the decision in Riley and will be covered by the discussion below regarding Section 6-16-105. In any event, Appellants in their briefs have not relied on the repeal of this section.
 
 
 35
 Section 6-16-109, which required paid solicitors to maintain certain records for three years, was amended to reduce the time to two years. Such change was of only limited benefit to the Appellants. This Court is of the opinion that the benefit was not sufficiently significant to meet the standards enunciated by the Supreme Court in Garland. Obviously, the legal relationship of the parties was not materially altered by the above change in the Colorado Charitable Solicitations Act.
 
 
 36
 The one section in which the change could be viewed as having some significance is in 6-16-105 (with some repetition in 6-16-106), in which an amendment removed a provision that required a paid solicitor to inform a solicited person that a portion of his contribution may be spent on costs of soliciting and that he has a right to a written explanation of how contributions will be spent and upon request be advised of the minimum percentage guaranteed to go to the charity or that there is no such guarantee. Despite the protestations of the Appellants, this Court is persuaded that the repeal of that section was directly caused and mandated by the Riley case, which was pending in the United States Supreme Court before the original Act was passed and before Plaintiffs' lawsuit. It appears that the State of Colorado was awaiting this decision before enforcement of the Colorado Act and to see if it mandated legislative changes.
 
 
 37
 The Riley case was a challenge to the North Carolina Charitable Solicitations Act on First Amendment grounds. The North Carolina Act provided in part that professional fundraisers must disclose to potential donors the percentage of charitable contributions collected during the previous twelve months that were actually turned over to charity. The Supreme Court held that such a mandated disclosure is unconstitutional as a content-based regulation of speech. Riley, 487 U.S., at 795, 108 S.Ct. at 2676, citing Miami Herald Publishing Co. v. Tornillo, 418 U.S. 241, 256, 94 S.Ct. 2831, 2839, 41 L.Ed.2d 730 (1974). Thus, while the pre-amendment Colorado Charitable Solicitations Act did not require the solicitor to disclose the actual percentage that would be received by the charity, the boldface statement that was required to be included on written confirmations stated that a portion of proceeds received may be spent on solicitation expenses, and that the contributor could request a written explanation of the allocation of his contribution between the costs of solicitation and the charity itself. The district court had reasonable information before it to find that the United States Supreme Court decision in Riley was the catalyst for this change in the Colorado statute. We note that Riley was decided by the Supreme Court on the very day that the instant lawsuit was filed.
 
 
 38
 In addition, in a transcript of a Senate hearing concerning the amended statute, a Senator states that the amended Colorado Charitable Solicitations Act "comes as a result of ... the Supreme Court decision in regard to this subject generally." Appellants' Appendix at 454. This discussion lends support to the holding of the district court concerning the actual impetus for the only significant change in the Colorado statute. The Senator is referring to the Riley case in the above quotation. Colorado officials were well aware of Riley as well as French in the Colorado Supreme Court and the potential problems that decisions in those cases might cause.
 
 
 39
 After review of the Riley case and the Colorado statutes, both pre and post amendment, this Court is persuaded that the district court's decision is not clearly erroneous. The changes in the Colorado statute, in particular those changes that could be deemed beneficial to the Appellants, can be traced directly to the Supreme Court's decision in Riley. As stated above, Riley was purely a First Amendment case, and thus any changes in the Colorado Charitable Solicitations Act mandated by and resulting from the Riley decision do not address the Appellants' equal protection concerns, which were the primary thrust of the Appellants' lawsuit to effect repeal of the entire statute. There were no changes in the Colorado Charitable Solicitations Act which could be deemed to flow from Appellants' equal protection claim. And the legal relationship between paid solicitors of funds and the State of Colorado was not materially altered by the new Act. Paid fund solicitors came under Colorado legislation by the original Act and stayed thereunder after the amended Act. The Plaintiffs' lawsuit was not "causally linked" to the statutory amendments.
 
 
 40
 Thus, the district court did not apply the wrong standards in evaluating the Plaintiffs' request for attorneys fees, and the use of the term "moving force" did not indicate that the Court was under the misapprehension that the Plaintiffs' lawsuit had to be the only cause of the statutory change to warrant an award of attorneys fees. There is every indication that the district court not only was aware of and understood the applicable law, but applied it correctly to the facts of this case on the prevailing party issue. It is worth repeating that it is the position of this Court that this catalyst portion of the prevailing party test requires a factual analysis that is reviewed by this Court under the clearly erroneous standard. There has been nothing presented to this Court that would indicate that the district court's conclusions on this issue are clearly erroneous, and that the discretion exercised by the district court in concluding that the Appellants were not prevailing parties should be reversed.
 
 
 41
 Finally, any references by the magistrate in his recommendation to possible professional ethical violations on the part of the Appellants' attorneys were specifically excluded from the district court's adoption of the magistrate's recommendation, and so are not before this Court on appeal. The magistrate also did not address the issue of what he considered to be excessive attorneys fees claimed herein. Such issue is also not before this Court.
 
 
 42
 AFFIRMED.
 
 
 
 *
 Honorable Fred Daugherty, Senior United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 42 U.S.C. § 1988 states in pertinent part:
 "In any action or proceeding to enforce a provision of § 1981, 1982, 1983 and 1986 of this title ... the Court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorneys fee as part of the costs."