THE PEOPLE *ex rel.* JAMES E. RYAN, Attorney General, Plaintiff-Appellant, v. TELEMARKETING ASSOCIATES, INC., *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—99—0038

Opinion filed May 19, 2000.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Floyd D. Perkins and Matthew D. Shapiro, Assistant Attorneys General, of counsel), for appellant.

Hopkins & Sutter, of Chicago (Michael A. Ficaro and David B. Goroff, of counsel), for appellees.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:

The Attorney General filed an amended complaint charging the defendants-appellees with common law fraud and breach of fiduciary duty. The amended complaint alleged that the defendants-appellees are professional fund-raisers for charity who, over an eight-year period, consistently retained more than 85% of the proceeds of their solicitations on behalf of an Illinois-based charity, VietNow Memorial Headquarters (hereinafter VietNow). The complaint alleged that defendant-appellees made solicitations on behalf of VietNow without informing prospective donors that only 15 cents out of every dollar they contributed would be made available for charitable purposes—while the balance would be kept by the fund-raisers. The trial court granted defendants' motion to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)).

The Attorney General raises the following issues for our review: (1) whether the allegations of the complaint plead a cause of action for common-law-fraud-based misrepresentation, breach of fiduciary duty, constructive fraud and/or for imposition of a constructive trust; (2) whether the first amendment's prohibition against "forcing speech" bars the causes of action alleged; and (3) whether the first amendment bars the claims alleged despite the fact that they are "straightforward" and based upon "content-neutral principles of law."

The original complaint in this case alleges that Telemarketing Associates, Inc. (Telemarketing), and Armet, Inc. (Armet), are companies that provide professional fundraising services for charitable organizations. Defendant-appellee Richard Troia is the owner and an officer and director of these companies (collectively, the fund-raisers). Telemarketing has entered into contracts with a charitable organization, VietNow, which provide that Telemarketing is to receive approximately 85% of the funds it collects for its professional efforts for VietNow in Illinois. In addition, Armet has contracts under which it retains third-party solicitors to raise money for VietNow outside of Il-

linois. Under these contracts, the outside solicitors receive 70% to 80% of the proceeds raised, while Armet receives 10% to 20% of the proceeds for its services.

There is no dispute that the fund-raisers have honored their contracts with VietNow. The Attorney General makes no claim that VietNow is dissatisfied with the fund-raisers' professional services. Similarly, the Attorney General makes no allegation that the fund-raisers have affirmatively misstated any information to any donor. The Attorney General instead alleges that the fund-raisers fraudulently concealed material information by not affirmatively volunteering their fee arrangement with the donors. By so acting, the complaint claims the fund-raisers violated the Solicitation for Charity Act (225 ILCS 460/1 *et seq.* (West 1998)) (the Solicitation Act), the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 (West 1998)), and the Uniform Deceptive Trade Practices Act (815 ILCS 510/2 (West 1998)), and breached their fiduciary duty by engaging in fraudulent concealment. The Attorney General also complained that Armet violated the Solicitation Act by failing to register as a professional fund-raiser with the Attorney General or ensure that the outside professionals it hired had registered.

The complaint sought broad relief against the fund-raisers, including barring them from fundraising in Illinois for five years, forfeiture of their compensation, liability for both compensatory and punitive damages and a requirement that they pay the Attorney General for the costs of investigation and suit.

In dismissing the complaint, the trial court found that the United States Supreme Court's opinion in *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 101 L. Ed. 2d 669, 108 S. Ct. 2667 (1988), established unequivocally that charitable solicitation by professional fund-raisers is protected speech entitled to full first amendment protection and that a state may not punish a fund-raiser for earning a high fee or treat as fraud the fund-raiser's failure to affirmatively explain its fee arrangement to prospective donors. The court, however, allowed the count alleging nonregistration by Armet to stand.

The Attorney General then filed certain amendments to the complaint, adding additional allegations but continuing to assert the earlier complaint in its entirety. The crux of the Attorney General's amended complaint continued to be that the fund-raisers had earned an excessive fee and failed to disclose this to VietNow's donors. The court again granted dismissal of the complaint with the exception of the nonregistration claim against Armet.

On December 1, 1998, the Attorney General voluntarily dismissed

the nonregistration claim and the court entered an agreed order in favor of the fund-raisers on all claims. The Attorney General then filed this appeal challenging the dismissal of the fraud-based claims directed at the fund-raisers' fees.

■ Initially, we observe that a section 2—615 motion to dismiss challenges only the legal sufficiency of a complaint and alleges only defects on the face of the complaint. *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172 (1997). The critical inquiry in deciding upon a section 2—615 motion to dismiss is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Vernon*, 179 Ill. 2d at 344, citing *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87, 672 N.E.2d 1207 (1996), and *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475, 575 N.E.2d 548 (1991). A cause of action will not be dismissed on the pleadings unless it clearly appears that the plaintiff cannot prove any set of facts that will entitle it to relief. *Vernon*, 179 Ill. 2d at 344, citing *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 542, 582 N.E.2d 108 (1991). Accordingly, in reviewing the circuit court's ruling on defendants' section 2—615 motion to dismiss, we apply a *de novo* standard of review. *Doe v. McKay*, 183 Ill. 2d 272, 274, 700 N.E.2d 1018, 1020 (1998).

■ The circuit court correctly found that the Attorney General's amended complaint infringes upon the fund-raisers' constitutional rights. The United States Supreme Court has repeatedly held that solicitation activity on behalf of a charity is a form of free speech protected by the first amendment to the United States Constitution. In *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 63 L. Ed. 2d 73, 100 S. Ct. 826 (1980), the Court struck down on first and fourteenth amendment grounds an ordinance which prohibited on-street and door-to-door solicitations for contributions by any charitable organization not using at least 75% of its receipts for charitable purposes. In reaching its decision the Court emphasized:

> "Prior authorities *** clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment." *Schaumburg*, 444 U.S. at 632, 63 L. Ed. 2d at 84, 100 S. Ct. at 833.

The Supreme Court and numerous lower courts have repeatedly affirmed the broad scope of first amendment protections accorded charitable solicitations. See, *e.g.*, *United States v. Kokinda*, 497 U.S. 720, 725, 111 L. Ed. 2d 571, 580, 110 S. Ct. 3115, 3118 (1990) ("Solic-

itation is a recognized form of speech protected by the First Amendment"); *Meyer v. Grant*, 486 U.S. 414, 422 n.5, 100 L. Ed. 2d 425, 435 n.5, 108 S. Ct. 1886, 1892 n.5 (1988) ("[T]he solicitation of charitable contributions often involves speech protected by the First Amendment and *** any attempt to regulate solicitation would necessarily infringe that speech"); *Gaudiya Vaishnava Society v. City of San Francisco*, 952 F.2d 1059, 1063 (9th Cir. 1990) ("The Supreme Court has held that fundraising for charitable organizations is fully protected speech"); *Indiana Voluntary Fireman's Ass'n v. Pearson*, 700 F. Supp. 421, 435 (S.D. Ind. 1988) (Charitable solicitation is "entitled to the entire panoply of protections afforded by the first amendment").

The Supreme Court has held that these constitutional rights fully apply even where charitable solicitation is done by paid professionals. *Schaumburg*, 444 U.S. at 632, 63 L. Ed. 2d at 84, 100 S. Ct. at 833-34. As the Court noted in *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 101 L. Ed. 2d 669, 108 S. Ct. 2667 (1988):

> "It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Riley*, 487 U.S. at 801, 101 L. Ed. 2d at 692, 108 S. Ct. at 2680, citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 265-66, 11 L. Ed. 2d 686, 698, 84 S. Ct. 710, 718 (1964).

*Riley* stressed that a "fundraiser has an independent First Amendment interest in the speech, even though payment is received." *Riley*, 487 U.S. at 794 n.8, 101 L. Ed. 2d at 687-88 n.8, 108 S. Ct. at 2676 n.8. See also *Indiana Voluntary Fireman's Ass'n*, 700 F. Supp. at 437 ("The protected speech overtones of such solicitations are not altered by the fact that the solicitor is a paid professional").

Government action that would infringe upon such speech is subject to strict scrutiny and may only restrict free speech where the restriction is precisely tailored to further a compelling state interest. See *Riley*, 487 U.S. at 799-800, 101 L. Ed. 2d at 691-92, 108 S. Ct. at 2679-80; *Secretary of State v. Joseph A. Munson Co.*, 467 U.S. 947, 967-68, 81 L. Ed. 2d 786, 802-03, 104 S. Ct. 2839, 2852-53 (1984); *Schaumburg*, 444 U.S. at 636, 63 L. Ed. 2d at 87, 100 S. Ct. at 836. The Attorney General appears to suggest that the mere fact that the fund-raisers' fees are high gives it a compelling interest to pursue its case, yet a similar argument was made in *Schaumburg* where the Village of Schaumburg claimed that more than 60% of the funds collected by the respondent, Citizens for a Better Government, were spent for the benefit of employees and not for a charitable purpose. Similarly, in *Munson*, the Court struck down a Maryland statute that forbade contracts between charities and professional fund-raisers if they provided that the fund-

raiser would retain more than 25% of the money collected. Again, the Court rejected that the state's interest in preventing fraud could justify such a restriction, stating:

"[T]here is no necessary connection between fraud and high solicitation and administrative costs. A number of other factors may result in high costs; the most important of these is that charities often are combining solicitation with dissemination of information, discussion, and advocacy of public issues, an activity clearly protected by the First Amendment ***." *Munson*, 467 U.S. at 961, 81 L. Ed. 2d at 799, 104 S. Ct. at 2849.

The Court called the statute at issue in *Munson* "fundamentally mistaken" in its premise that high solicitation fees could ever be an accurate measure of fraud. *Munson*, 467 U.S. at 966, 81 L. Ed. 2d at 802, 104 S. Ct at 2852. The Court also explained that focusing on the percentage of a donation received by a fund-raiser is not narrowly tailored to the goal of preventing fraud, as the first amendment requires:

"That the statute in some of its applications actually prevents the misdirection of funds from the organization's purported charitable goal is little more than fortuitous. It is equally likely that the statute will restrict First Amendment activity that results in high costs but is itself a part of the charity's goal or that is simply attributable to the fact that the charity's cause proves to be unpopular. On the other hand, if an organization indulges in fraud, there is nothing in the percentage limitation that prevents it from misdirecting funds. In either event, the percentage limitation, through restricting solicitation costs, will have done nothing to prevent fraud." *Munson*, 467 U.S. at 966-67, 81 L. Ed. 2d at 802, 104 S. Ct. at 2852.

The *Munson* decision specially rejected the argument raised by the Attorney General that a fund-raiser's receipt of high fees means that a solicitation does not serve a charitable purpose and makes the request for a donation a form of fraud. The dissent in *Munson* made the same argument, which the majority rejected:

"[T]he dissent *** 'simply misses the point' when it urges that there is an element of 'fraud' in a professional fundraiser's soliciting money for a charity if a high proportion of those funds are expended in fundraising. [Citation.] The point of the *Schaumburg* Court's conclusion that the percentage limitation was not an accurate measure of fraud was that the charity's 'purpose' may include public education. It is no more fraudulent for a charity to pay a professional fundraiser to engage in legitimate public educational activity than it is for the charity to engage in that activity itself. And concerns about unscrupulous professional fundraisers, like concerns about fraudulent charities, can and are ac-

commodated directly, through disclosure and registration requirements and penalties for fraudulent conduct. " *Munson*, 467 U.S. at 967-68 n.16, 81 L. Ed. 2d at 802-03 n.16, 104 S. Ct. at 2852-53 n.16.

The Court in *Riley* subsequently emphasized its holding that a fund-raiser cannot be prosecuted for fraudulent conduct merely on the fact that he or she charges a high fee. There, the Supreme Court examined the constitutionality of a North Carolina statute that defined the reasonable fee that a professional fund-raiser may charge according to a three-tiered schedule. Under that schedule, a fee of up to 20% of receipts collected was deemed reasonable. A fee of between 20% and 30% was deemed unreasonable upon a showing that the solicitation at issue did not involve the dissemination of information or advocacy relating to public issues as directed by the charity. A fee exceeding 35% was deemed unreasonable but the fund-raiser was allowed to rebut that presumption by a showing that the fee was necessary. *Riley*, 487 U.S. at 784-86, 101 L. Ed. 2d at 681-82, 108 S. Ct. at 2671-72. The statute also required professional fund-raisers to orally disclose to potential donors before an appeal for funds the percentage of charitable contributions collected during the previous 12 months that were actually turned over to the charity. 487 U.S. at 786, 101 L. Ed. 2d at 682, 108 S. Ct. at 2672.

The Court held that the state's interest in preventing fraud could not support the restrictions imposed by the statute:

> "Our prior cases teach that the solicitation of charitable contributions is protected speech, and that using percentages to decide the legality of the fundraiser's fee is not narrowly tailored to the State's interest in preventing fraud." *Riley*, 487 U.S. at 789, 101 L. Ed. at 684, 108 S. Ct. at 2673.

The court repeated that "there is no nexus between the percentage of funds retained by the fundraiser and the likelihood that the solicitation is fraudulent." *Riley*, 487 U.S. at 793, 101 L. Ed. 2d at 687, 108 S. Ct. at 2675. Although the Attorney General argues vigorously that these statements were not meant to apply to common law actions or those statutory claims based upon common law principles, the same concerns which caused the Court to reject the statute at issue in *Riley* applies with equal force to the cause of action alleged by the Attorney General. Nor do we agree with the Attorney General's argument that the Supreme Court meant only to prohibit "rigid across-the-board limitations" on fund-raising fees. Indeed, the threat to constitutionally protected speech is even greater in cases in which the Attorney General or other officials have free rein to decide which fund-raisers to target.

The Maryland statute at issue in *Munson* gave the Secretary of State of Maryland the discretion to grant a waiver of the statute "whenever necessary." *Munson*, 467 U.S. at 964 n.12, 81 L. Ed. at 800 n.12, 104 S. Ct. at 2850-51 n.12. The Secretary of State argued that this made the law constitutional because she had granted such waivers in an extremely liberal manner, and special care shown for the rights of advocacy groups. *Munson*, 467 U.S. at 964 n.12, 81 L. Ed. 2d at 800 n.12, 104 S. Ct. at 2850-51 n.12. The Supreme Court explained why giving state officials such discretion would pose an even greater threat to free speech:

> "[E]ven if the Secretary were correct, and the waiver provision were broad enough to allow for exemptions 'whenever necessary,' we would find the statute only slightly less troubling. Our cases make clear that a statute that requires such a 'license' for the dissemination of ideas is inherently suspect. By placing discretion in the hands of an official to grant or deny a license, such a statute creates a threat of censorship that by its very existence chills free speech. [Citations.] Under the Secretary's interpretation, charities whose First Amendment rights are abridged by the fundraising limitations simply would have traded a direct prohibition on their activity for a licensing scheme that, if it is available to them at all, is available only at the unguided discretion of the Secretary of State." *Munson*, 467 U.S. at 964 n.12, 81 L. Ed. 2d at 800-01 n.12, 104 S. Ct. at 2850-51 n.12.

See also *Riley*, U.S. 487 U.S. at 793-94, 101 L. Ed. 2d at 687, 108 S. Ct. at 2675-76 (rejecting a statutory presumption of unreasonableness which the fund-raiser is permitted to rebut).

■ The Attorney General claims that the fund-raisers committed fraud because they represented that monies donated would be used for VietNow's charitable purposes but did not inform prospective donors that, pursuant to their contract with VietNow, only 15% of the proceeds raised would be used by VietNow. This was precisely the type of affirmative duty to speak that was struck down in *Riley*. The Supreme Court held that the provision compelled speech and was therefore a content-based restriction subject to exacting first amendment scrutiny. *Riley*, 487 U.S. at 789, 101 L. Ed. 2d at 684, 108 S. Ct. at 2673. The Court found that the mandatory disclosure rule could not withstand such scrutiny because the proffered state interest was "not as weighty as the State asserts" and that "the means chosen to accomplish it are unduly burdensome and not narrowly tailored." *Riley*, 487 U.S. at 798, 101 L. Ed. 2d at 690, 108 S. Ct. at 2678. Other courts have reached the same conclusion. See, *e.g.*, *People v. French*, 762 P.2d 1369, 1375 (Colo. 1988); *State v. Events International, Inc.*, 528 A.2d

458, 461 (Me. 1987); *Indiana Voluntary Fireman's Ass'n.*, 700 F. Supp. 421; *Telco Communications, Inc. v. Barry*, 731 F. Supp. 670 (D.N.J. 1990); *Kentucky State Police Professional Ass'n v. Gorman*, 870 F. Supp. 166 (E.D. Ky. 1994).

The Attorney General argues that the fund-raisers are fiduciaries to the public who transfers funds to them and, as fiduciaries, the fund-raisers should be held to a duty to fully inform the donors about the nature of their donation. See, *e.g.*, *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 562, 402 N.E.2d 181 (1980); *Graham v. Mimms*, 111 Ill. App. 3d 751, 761, 444 N.E.2d 549 (1982). Yet the fund-raisers in the *Riley* case and the fund-raisers in the other solicitation cases that preceded it were also fiduciaries with respect to the money they solicited and collected. The cases cited by the Attorney General are neither first amendment nor charitable solicitation cases. They are, therefore, plainly distinguishable.

In short, we find that the type of allegations made by the Attorney General's complaint violate the first amendment and have been thoroughly discredited by the Supreme Court. Accordingly, for the foregoing reasons, the judgment of the circuit court dismissing the Attorney General's amended complaint is affirmed.

Affirmed.

CAMPBELL and O'BRIEN, JJ., concur.